### ALFRED E. ELY *vs.* MONROE STANNARD.

The plaintiff having bought land of the defendant gave him in part payment his negotiable note.  Subsequently, desiring to exchange the land so purchased, with a mortgage upon it, for other land belonging to one *H*, he executed a mortgage to the defendant to secure the note, and delivered it to the town clerk for the defendant's use.  The defendant never in fact took it into his possession.  The plaintiff then exchanged lands with *H*, the amount of the mortgage note being taken into account and being part of the consideration of his deed.  The defendant afterwards transferred the note before maturity to a bonâ-fide holder.  The plaintiff having paid the note requested the defendant to transfer the mortgage to him, which he refused to do.  The defendant afterwards, for two hundred dollars paid him by *H*, released the mortgage to *H's* grantee, who took both *H's* deed and the release in good faith, supposing that the note was paid.  In an action on the case for fraud in releasing the mortgage, it was held—that the defendant's release to *H's* grantee operated as an acceptance of the plaintiff's mortgage, that the plaintiff by paying the mortgage note became equitably entitled to the mortgage, and that the defendant by releasing it had committed a fraud on the plaintiff.

A release deed is one of the regular modes of conveying property, and it makes no difference whether or not the releasee has an existing estate in possession.

ACTION ON THE CASE for fraud in releasing a mortgage to which the plaintiff was equitably entitled; brought to the Superior Court in Hartford County, and tried to the jury on the general issue before *Beardsley, J.*

Upon the trial it became a material question whether a certain mortgage executed by the plaintiff to the defendant, had ever been legally delivered to the latter.

The plaintiff offered evidence to prove, among other things, that, being indebted to the defendant for the purchase of the land so mortgaged by a negotiable promissory note, for the sum of $1,200, dated July 9, 1873, payable eighteen months from date, and being desirous to exchange the land, with a mortgage upon it to secure the same, for an equity of redemption owned by one Lester S. Hills, he executed the mortgage in question and delivered it to the town clerk for the use of the defendant, intending thereby to render it a valid conveyance; and that on the same day he conveyed the property so mortgaged to Hills by a quitclaim deed; that the amount of the mortgage, and the amount of the mortgages upon Hills's property so given in exchange, were taken into account by them in making the exchange, but it was agreed between them that neither should assume the payment of the other's mortgage; that afterwards the defendant, before the maturity of the note, sold it to a bonâ-fide holder for value, and that upon the note becoming due, the plaintiff was called upon to pay it, and that he afterwards, after the commencement of the present suit, but before the trial, paid the amount of the note to the holder thereof; that the plaintiff, after knowing that the note was so outstanding and unpaid, requested the defendant to assign the mortgage to him or to some third person for his benefit, to protect him upon his payment of the note, which the defendant refused to do; that afterwards Hills applied to the defendant to release the mortgage to one White, to whom Hills had contracted to sell the property; that the defendant at first refused to release it, but finally agreed to do so, and

did in fact execute and deliver to Hills a quitclaim deed of his interest, describing it as follows: "All such right and title as I, the said Stannard, have or ought to have in or to a certain piece of land situated in said Hartford, and bounded and described in a certain mortgage deed executed by Alfred E. Ely, dated March 9th, 1874, and recorded in Hartford land records, vol. 153, page 513, hereby intending to release said mortgage;" and that Hills thereupon paid him the sum of two hundred dollars therefor; that White thereupon purchased the property of Hills in good faith, supposing that the mortgage was properly released, and not knowing that the note to secure which the same was given was then outstanding and unpaid; and that the defendant, when he so released the mortgage, knew that the note was still outstanding and unpaid.

The defendant claimed, and introduced evidence to prove, that he disclaimed the mortgage deed to himself as soon as he knew of it, and that he signed the release deed by advice of counsel, to remove a cloud from the title, after he had refused to accept the mortgage, without any particular knowledge of the contents of the release.

The plaintiff thereupon requested the court to charge the jury that if they found that the defendant, knowing that the mortgage deed had been executed, executed and delivered the release deed to Hills, he thereby accepted the mortgage, and that his conveying to a third person the interest so conveyed to him by the mortgage, constituted in law an acceptance of it; but the court charged the jury that the law required a delivery and acceptance to render a mortgage valid, but that a personal delivery to the grantee was not necessary, or a formal assent by the grantee; that if the deed was beneficial to the grantee, his assent would be presumed unless he dissented and repudiated it; and left it to the jury to say upon all the evidence in the case, whether the defendant assented to the deed or repudiated it.

The jury having returned a verdict for the defendant, the plaintiff moved for a new trial for error in the charge of the court.

*C. E. Perkins*, in support of the motion.

1. The court in its charge treated the case as turning entirely upon the question of the validity of the mortgage as a deed *inter partes*, and, waiving for the present the question whether this was the proper view, we submit that the court erred in laying down the rule on this subject. The validity, or rather the existence, of a deed depends on its *delivery*, and though acceptance either express or implied is necessary, it is only because there can be no delivery without an acceptance. This delivery need not be to the grantee, it may be to any person for him; the delivery to a third person for the use of the grantee removes the title from the grantor, and as the title must be somewhere, it goes by the act into the grantee, and can be nowhere else. This principle is most clearly set forth in *Merrills* v. *Swift*, 18 Conn., 257. See also *Woodward* v. *Camp*, 22 Conn., 461. The same doctrine has been held in innumerable other cases, of which we will cite only a few. The only question here is, what is the law of this state. *Fisher* v. *Hall*, 41 N. York, 416, 423; *Everett* v. *Everett*, 48 id., 218; *Mather* v. *Corliss*, 103 Mass., 568; *Tompkins* v. *Wheeler*, 16 Pet., 106, 119; *Henrichson* v. *Hodgden*, 67 Ill., 179; *Burkholder* v. *Casad*, 47 Ind., 418; *Gould* v. *Day*, 15 Albany Law Jour., 389.

2. But if it were necessary to prove more than this, the fact that Stannard afterwards sold this mortgage to a third person for two hundred dollars, describing the mortgage deed correctly in his quitclaim, is sufficient evidence of his assent. Any act which shows that the grantee knows of the conveyance, and recognizes it as an existing deed, is sufficient, and how can he show it more strongly than by selling it to a third person? If this had been an absolute conveyance to Stannard, and he had quitclaimed it to a third person for two hundred dollars, there could not be any doubt of his assent.

3. But we submit that, besides this, the position of Stannard towards Ely was such, after he knew of the existence of the mortgage, and that the note was outstanding in a third person's hands, who had called on Ely to pay it, that he was bound at least to let it remain as it was, and his conduct in

releasing it for a bribe was a fraud upon Ely, and a breach of his duty as trustee, for which an action will lie, irrespective of the technical question whether such a legal delivery of a deed had been made as to make it valid against third persons or attaching creditors.

*G. G. Sill*, contra.

1.   The release deed executed by Stannard, so far from being an acceptance, showed clearly that he did not regard the mortgage as received.

2.   The mortgage deed executed by Ely operating to create a cloud upon the title of the land described in it, Stannard did no more than a court of equity would compel him to do.

3.   The court ought not to have charged the jury as the plaintiff requested, for the request assumed that Stannard by his quitclaim deed conveyed his interest in the premises to White. But there is a plain distinction between conveying and releasing an interest; no interest was conveyed to White. Stannard simply extinguished whatever interest he had.

4.   The court properly told the jury what constituted a delivery and acceptance, and left it to them to determine whether in fact there was an acceptance.

PARK, C. J.   In the recent case of *White* v. *Griffing*, (*ante*, p. 437,) we said that it was difficult to see how an assignee in bankruptcy could sell the lease of the bankrupt for a large sum, and appropriate the money for the benefit of the creditors, without accepting the assignment of the lease. The finding in that case was, that the assignee put up the lease for sale at public vendue, and that it was sold for a considerable sum of money, which the assignee received and appropriated for the benefit of the bankrupt's creditors. The question was whether, as matter of law, the assignee by so doing accepted the conveyance of the lease, and we strongly intimated that his acts amounted in law to an acceptance of the conveyance. It was said by the assignee that, in selling the lease at public vendue, he was merely experimenting to ascertain whether the lease had any value. It is said by the defendant in this

case that in selling and releasing the mortgage title he was merely removing a cloud on the property, created by a deed, which had never been accepted, and consequently had never been delivered, for delivery includes an acceptance. These claims are equally untenable.

The defendant insists that he sold nothing, for he had nothing to sell; still he went through the form of a sale, for he took a price and for it gave a release which he knew the plaintiff would regard as a great injury to himself, while Hills showed that he considered it of great benefit to himself, by being willing to pay the sum of two hundred dollars to induce him to give it, and he probably would have paid much more rather than have failed to get the release. By the release the defendant admits in terms that he parted with a mortgage title. After particularly describing the mortgage deed, in his deed to White, he says, "hereby intending to release said mortgage." If the mortgage had never been accepted by him, how did it happen that he had a mortgage to release? He says he releases the mortgage described in his deed, which could not be true unless he had accepted the deed.

We think the court below erred in not complying with the plaintiff's request, to charge the jury that if they should find that the defendant, knowing that the mortgage deed had been executed, executed the release, he thereby accepted the mortgage; and that his conveying to a third person the interest so conveyed to him by the mortgage constituted in law an acceptance of it. The defendant criticises this request, because it assumes a conveyance of the mortgage title by the defendant, and insists that there is a clear distinction between conveying and releasing property to a third person. We are unable to see the force of this distinction, so far as it applies to the case in hand. A quit-claim, or release deed, is one of the regular modes of conveying property known to the law, and it is almost the only mode in practice, where a party sells property and does not wish to warrant the title. Dr. Webster says in his dictionary, " In law a release or deed of release is a conveyance of a man's right in lands or tenements to another who has some estate in possession." This is a strictly

technical definition; but by long established practice it makes no difference whether the releasee has an existing estate in possession or not. The release will convey to him, in any circumstances, whatever interest the releasor has in the property. But in the present case the releasee had an interest in the property in possession, namely, the equity of redemption.

We see no substantial distinction between the case under consideration and that of *White* v. *Griffing;* and for the reasons there given, and upon the authorities there cited, we think there was error in the charge of the court, and a new trial is advised.

In this opinion the other judges concurred.