[Civil No. 3958.   Filed July 5, 1938.]

[80 Pac. (2d) 968.]

NELLIE HOIG SMITH and PIERRE GETZWILLER, Appellants, v. J. M. BRIMSON, Appellee.

Mr. Frank E. Thomas, for Appellants.

Mr. C. O. Anderson, Mr. J. T. Kingsbury, for Appellee.

LOCKWOOD, J.—J. M. Brimson, hereinafter called plaintiff, brought this suit against Nellie Hoig Smith, whom we shall hereinafter call defendant, and Pierre Getzwiller, for the partition of certain real estate situate in Cochise county which plaintiff claims by his third amended complaint, which was filed after the case was tried on the merits for the purpose of avoiding a variance between the proof and the pleading, was held by him and defendant as tenants in common. Getzwiller was joined merely because defendant had made a lease to him of the premises, and his interest therein depends upon a determination of the respective interests of plaintiff and defendant. Defendant answered with a general and specific denial, which put in issue all of the allegations of the complaint, with one exception not material to this opinion. Judgment was rendered, finding that plaintiff and defendant were tenants in common of the property in litigation, and canceling the lease under which Getzwiller claimed, so far as the undivided one-half of the premises adjudged to the plaintiff was concerned, but making no order regarding a partition. From this judgment, defendant and Getzwiller have appealed.

The record shows the following state of facts: Plaintiff and defendant were married at Salem, Oregon, during the year 1912, and shortly thereafter moved to California, where they lived together as husband and wife. On the 23d day of April, 1917, defendant secured an interlocutory decree of divorce from plaintiff,

on the grounds of non-support, which decree became final in April, 1918. The decree specifically found that there was no community property belonging to plaintiff and defendant. Thereafter defendant married one Hoig in California, but lived with him only for a few months. The record is silent as to whether she was ever divorced from Hoig or not, but at all events she never remarried plaintiff. The evidence showed that there was certain property in California which stood in the name of defendant at the time of her divorce. It also showed that after the divorce plaintiff engaged in various real estate transactions, the upshot of which was that certain property was acquired by him amounting to eight acres, which was called the Burr property, but that this property was put in the name of defendant. In 1924 the parties removed to Cochise county, and the premises in question were purchased from one Moranda, the title being taken in plaintiff as trustee. The Burr property and the other property in the name of defendant, together with certain other equities which were apparently in the name of plaintiff, represented the consideration for the property in litigation herein. Two days later plaintiff executed an unconditional warranty deed to the premises to defendant, signing the same as trustee, and the legal title to the premises has ever since been in the latter.

It was the contention of plaintiff, as set forth in his third amended complaint, that at the time of the dissolution of the marriage in California, all of the property there, most of which stood in the name of defendant, was in reality community property, and that by reason of the divorce and the failure of such divorce to adjudicate the community rights therein, he and defendant became tenants in common thereof; that the California property was traded to Moranda as part of the consideration for the premises in controversy,

and that it was orally understood and agreed at all times that he and defendant should be tenants in common of the property so purchased.

It was the position of defendant, on the other hand, that the California property was her separate, and not community, property; that when plaintiff was named as trustee in the deed from Moranda, she was the beneficiary under said trust deed, and that the execution of the deed to her executed the trust.

Plaintiff was examined as to how it happened that the California property, which was the consideration for the purchase of the Arizona property, happened to stand in the name of defendant, and testified as follows:

"Q. Now, that Burr property, in California, being of the value of $16,000, that you acquired since your divorce, whose name was that put in? A. In her name.

"Q. Why? A. Because I was going to have a lawsuit up with a man by the name of Joe Dutro and she said that she was afraid I would lose that suit and they would attach this property if I didn't have it in her name.

"  . . .

"Q. To make this matter quite clear: I think you told the court that, to protect yourself from a possible judgment against you, you made this deed to this land to Mrs. Smith, at that time Mrs. Brimson? A. Yes."

He was also examined as to why he deeded the Arizona property to defendant, and said:

"Q. Now, later on, did you deed that property, or any part of it, to Nellie Hoig Smith? A. I put the deed in her name.

"Q. And under what circumstances, and why? A. She said that she was afraid that while I was in the real estate business I might get into trouble and they would come on the property for damages.

"  . . .

"Q. On the 26th day of December, 1924, you made out a warranty deed, did you not, to this land in question? A. Yes.

"Q. And your reason, or excuse, for doing so, is that you feared a judgment might be rendered against you? A. No sir, I don't think I feared that at all. I told you that Mrs. Smith feared that and wanted me to put it in her name."

The sum of his testimony as to the reason why both the California and the Arizona property were placed in the name of defendant is that the parties feared creditors of his might seize the property on some kind of a judgment, and in order to defeat such possible contingency, the property was taken in her name. True, he says in one place, that he did not seriously fear this result, but he also says that she feared it, and he agreed to this course of conduct.

■■ Regardless of the question of whether, when the title is taken in the name of one party, an agreement, either written or oral, for a constructive or resulting trust in another is shown, we think when the purpose of taking title is as testified to by plaintiff himself in the present case, that the rule laid down by us in the case of *MacRae* v. *MacRae,* 37 Ariz. 307, 294 Pac. 280, is controlling. In the MacRae case the husband conveyed property to his wife, coupled with a promise on her part to re-convey, on account of the fear of a judgment against him, which fear turned out, in the long run, to be imaginary. Therein we said (pp. 318, 319):

"The maxim 'He who comes into equity must come with clean hands' means 'whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' Pomeroy's Equity Jurisprudence, 3d. Ed., par. 397. The very cause of the establishment of equity jurisdiction is that equity interposes only to enforce the re-

quirements of conscience and good faith in matters outside of the rules of law, or even in contradiction to those rules. To hold that equity only applies the maxim in question when the attempted fraud actually succeeds would in effect place a premium on fraud, for the debtor could say, 'I may make the fraudulent conveyance without fear of loss if it proves in the end to have been unnecessary; the only case where I can possibly lose the property by refusal of my trustee to reconvey is when I would have lost it to a debtor otherwise. In one case I am sure to win; in the other it is merely a choice of to whom I will lose.'

''After careful consideration of the cases cited and the reasoning contained therein, we are of the opinion that the fundamental requisite in determining in cases of this kind whether a party comes into court with clean hands is the moral intent, and not the actual injury done, and that the grantor cannot wash his intentionally soiled hands with the soap of an .inability to carry out his intention and thereby invoke the jurisdiction of a court of equity.

'' . . .

'' . . . The admissions of defendant and the findings of the trial court show conclusively that every transfer of the property we are asked to review was conceived in sin and born in iniquity, and that the parties thereto were engaged in a conspiracy to violate the criminal law of this state. If that law was not actually violated by them, it was not due to any lack of intent on their part, but to a mistake as to the facts which caused them to make the attempt,''

and we refused to interfere, stating that the court would leave the parties in the situation in which they had placed themselves.

■ The only exception to the rule just laid down under such circumstances was, as was said in the Mac-Rae case, that if the parties are not *in pari delicto,* courts of equity will at times intervene for the protection of the less guilty one. We see nothing in the record to bring the present case within that exception.

There was no fiduciary relation existing between the parties, for their marriage had long since been dissolved, and was never renewed. So far as the law is concerned, they were acting at arm's length. There is not the slightest suggestion that any fraud was exercised by defendant in persuading plaintiff to make the conveyance in question. His only statement that could even remotely suggest that the conveyance was not made by him for the purpose of defrauding his creditors is that he did not really fear creditors might seize the property, but conveyed it to allay the fears of defendant. This utterly fails to establish any fraud.

For the reasons set forth in the MacRae case, *supra,* we hold that the conduct of the parties in the whole transaction, as shown by the testimony of plaintiff himself, was such that the law will leave them where it finds them. This being the case, and the legal title to the property admittedly being in defendant, the judgment of the trial court must be reversed and the case remanded with instructions to enter judgment dismissing the action.

McALISTER, C. J., and ROSS, J., concur.