167 P.2d 100

**HAMBLIN et ux. v. WOOLLEY et ux.**
**No. 4783.**

Supreme Court of Arizona.

March 13, 1946.

D. V. Mulhern and B. H. Gibbs, both of Phoenix, for appellants.

D. B. Morgan, of Phoenix, for appellees.

MORGAN, Judge.

Inasmuch as the wives of the parties appear herein only by reason of their marital status, and were not otherwise involved in the litigation, we will designate the appellants as plaintiff and the appellees as defendant. The facts out of which this cause arose (upon a complaint by plaintiff to quiet title, and answer seeking like affirmative relief by defendant) may be stated briefly as follows:

William M. Brown, about the year 1915 took possession of a tract of land in House Rock Valley, including the SE¼ SE¼ of section 14, T 19, N, R 3 E, Coconino County, Ariz., upon which he established a stock raising headquarters and made improvements consisting of a residence, corrals, reservoirs, watering troughs and fencing. Adjacent to this ranch, on the NW¼ SW¼ of section 13, same township and range, he developed three small springs or seeps, known as "Hod Brown", "North Cliff Dweller", and "South Cliff Dweller" springs, by tunneling, construction of intake gathering basins, and laid a pipe line to his headquarters, diverting the flow of the springs to his water troughs and reservoirs. In January, 1917, all the water so developed had been put to beneficial use for domestic and stock watering purposes. Prior to the development and use, the water from these springs, after flowing for a few yards, disappeared into the floor of the canyon which drains into House Rock creek, a tributary of the Colorado River. The springs were not the source of a flowing stream. The total amount of water produced amounted to from fourteen to eighteen hundred gallons per day. Brown lived at the ranch and used the water continuously until 1919; after that date the water and ranch were used by his lessees, but he apparently recognized that a half interest was held or owned by others. On February 7, 1938, he executed and delivered to plaintiff a quitclaim deed, with recitations as follows:

"* * * for the sum of Three Hundred ($300.00) Dollars, the following tract of land and water rights in Coconino County, State of Arizona.

"All of my right, title and interest in what is known as the 'Hod Brown' Spring, and Recorded as the Cliff Dwellers Spring, situated about two and one half (2½) miles south of the Old House Rock Spring, in coconino County State of Arizona

"Said springs of water was filed on by William A. Ford who signed his name on the application that was made and signed by him signing as Wm Ford, and did not have the application that was signed by the three applicants composed of Wm Ford, William M. Brown and Sixtus E. Johnson, all of the applicants residing at Kanab, Utah at the time the application was made.

"The grantor claims that an undivided one-half of the said springs, and the Pipe Line, Reservoirs two in number togather with the Lumber Cabin, which was used as a dwelling, two correls and the fencing arround the large reservoir. Belongs to him and he made it his home from the year 1915 up to the month of January, 1929, Since which time he has used and controlled the waters and improvements every since he left the place and had renters on the property and still claim the right to all the improvements and waters as against every one except the Government of the United States of America."

The instrument was duly acknowledged but not placed of record. At the time of the delivery of this deed, plaintiff was in possession of and was using the water from the pipe line as Brown's lessee. On April 21, 1938, Brown filed with the state water commissioner application No. A–1885 for permit to appropriate these waters. This application was actually made by Brown at the behest of plaintiff who handled the matter, paying all expenses incidental thereto. The application was based upon the development and water improvements mentioned above, and the beneficial use of the water for twenty years prior to the application. Permit No. A–1184 was issued November 1, 1938, granting to Brown beneficial use of eighteen hundred gallons of water daily, three hundred of which were for domestic, and fifteen hundred for stock watering use, with a priority date of April 21, 1938, and disclosing the construction work as completed. On March 29, 1939, Brown executed and delivered to plaintiff the following quitclaim deed: "* * * for the sum of Three Hundred ($300.00) Dollars the following described water rights and grazing rights, to-wit: The one-half interest in what is known as the Hod Brown, Springs, situated in House Rock Valley, Coconino County and State of Arizona and described in that certain water certificate issued by the Permit No. A–1184 and Application No. A–1885, for the Hod Brown Springs described as being in the SW section Corner of Section 13. Township 39. North, Range 3 East. G. & S. R.

Meridian, more fully described as Hod Brown Springs, also the North Cliff Dweller Spring, and the South Cliff Dweller Spring, and being within the NW¼ of the SW¼ of Section 13. Township (39) North of Range 3 East, Together with all of the grazing rights in any way belonging to the same."

This was acknowledged and recorded with the county recorder on June 30, 1939. Plaintiff testified that he secured this deed in order that he might be in possession of the whole title to the water and rights, since the first deed indicated Brown only had a half interest at the time of its execution. On June 26, 1939, the water commissioner issued to Brown a formal certificate of water right, confirming his right to the water described in the application and permit. This was recorded with the county recorder on June 28. The last named deed was presented to the water commissioner, and on April 16, 1940, approved as an assignment of a one-half interest of the water right. On October 14, 1939, Brown executed and delivered to defendant a quitclaim deed conveying all his right, title and interest in the springs as evidenced by the certificate of water right, together with the reservoirs, pipe lines, etc., maintained for the diversion and use of water. This was recorded on October 16, 1939, with the county recorder. At and prior to the date of this instrument, defendant had actual notice of the deeds which Brown had made to plaintiff, and constructive notice of the second deed recorded in June of 1939. Defendant was a member of the advisory board of Arizona Grazing District No. 1, organized under the Federal Taylor Grazing Act, 43 U.S.C.A. § 315 et seq. It was the duty of this board to receive from applicants for grazing allotments their evidence of water rights and other holdings upon which grazing rights are based, and to recommend or reject such applications. Following receipt of first deed from Brown, plaintiff submitted it and his application for permit to the advisory Board as a basis for his claim of ownership to water and other rights. Through his official position, the defendant was fully advised of plaintiff's claim under the Brown deed.

The cause was tried before a jury which specially found: (1) That the waters involved, under the instructions of the court pertaining to appropriable waters prior to 1919, were in fact subject to appropriation; (2) that defendant had actual knowledge of the unrecorded quitclaim deed from Brown to plaintiff on October 14, 1939 when he received his deed from Brown. The trial court made findings and conclusions that the evidence did not justify the finding of the jury that the water was in fact appropriable at the time of Brown's entry prior to 1919. The court then, apparently upon the theory that until the certificate of water right had actually been issued by the water commissioner Brown had nothing to convey and that the deeds to plaintiff did not carry the after-acquired title, concluded that defendant

was entitled to judgment. From the judgment entered dismissing plaintiff's complaint and quieting title in defendant, plaintiff brought this appeal.

■ Much of defendant's brief pertains to the question of the appropriability of water prior to the 1919 law, Laws 1919, c. 164. We are of the view that whether this water was then appropriable is immaterial. Brown, by settlement and making improvements on the public domain and in actually developing and putting water to use, had an interest which was subject to conveyance. Test v. Reichert, 141 Neb. 836, 14 N.W.2d 853, 855, 153 A.L.R. 504. In this case the authorities pertaining to the rights of occupants of public lands are reviewed, and the following conclusion made:

"From these authorities it appears that one may go on open public lands and establish himself there temporarily, but not enclose such lands with a fence, and is not considered as technically a trespasser. No individual can interfere with such occupation, and any rights growing out of such possession may be sold.

"It is the law that 'one may acquire rights in public lands by adverse occupancy against all third persons, and this is true even though the claimant admits the government's ownership; in other words, the claimant's possession may be adverse without being hostile to the government.' 1 Am.Jur. 848, sec. 104."

In Tarpey v. Madsen, 178 U.S. 215, 20 S.Ct. 849, 851, 44 L.Ed. 1042, the court, through Mr. Justice Brewer, said: "It must be remembered that mere occupation of the public lands gives no right as against the government. It is a matter of common knowledge that many go on to the public domain, build cabins, and establish themselves, temporarily at least, as occupants, * * *. These occupants are not in the eye of the law considered as technically trespassers. No individual can interfere with their occupation, or compel them to leave. Their possessory rights are recognized as of value and made the subjects of barter and sale. * * *"

If, as contended by defendant, the waters of the springs prior to 1919 were not appropriable, but were in fact a part of and appurtenant to the soil, as held by this court in Fourzan v. Curtis, 43 Ariz. 140, 29 P.2d 722; McKenzie v. Moore, 20 Ariz. 1, 176 P. 568; Campbell v. Willard, 45 Ariz. 221, 42 P.2d 403, still the possession of such water, under the circumstances disclosed, would be a right which could be sold under the rule established in the foregoing cases.

■ Both parties appear to rely on Brown's title under his 1938 application for permit and the certificate which was issued, evidencing that right. This being so, whether the water prior to 1919 was appropriable would seem immaterial. No one is claiming that Brown's certificate of wa-

ter right secured in 1939 is invalid because of a prior existing appropriation.

The permit and certificate of water right secured in Brown's name were based upon his prior possession, development and use of the water. These rights were capable of sale and were actually conveyed to plaintiff by the first deed, at least to the extent of a one-half interest. The second deed, from the testimony, was executed and delivered to convey to the plaintiff any remaining interest in Brown. Whether, therefore, the judgment of the court can be sustained rests upon the effect given to the two deeds from Brown to plaintiff. If these deeds, though denominated quitclaim deeds, were intended and as a legal proposition are sufficient to carry after-acquired title, and as a notice of that fact, then the judgment must be reversed. The defendant, having notice of these deeds at the time he acquired his conveyance from Brown, stands in the same position as his grantor. He can no more dispute the legal intent and effect of the instruments, as disclosed by their provisions, than could Brown. He is not an innocent purchaser for value without notice. Sec. 71-423, A.C.A.1939; Larkin v. Hagan, 14 Ariz. 63, 126 P. 268; Barringer v. Lilley, 9 Cir., 96 F.2d 607; Annotation, 25 A.L.R. 94.

The parties have at great length submitted authorities dealing with the effect of quitclaim deeds as an estoppel or nonestoppel in connection with after-acquired title. It is conceded by all parties that a mere quitclaim deed will not carry after-acquired title. On the other hand, it is settled that a deed in the form of a quitclaim may carry after-acquired title. It all depends upon the recitations in the particular instrument. The statement found in 31 C.J.S., Estoppel, § 17, p. 202, clearly gives the rule: "Whatever the form or nature of the instrument, if it affirms, either by implication or express terms, that the grantor is seized or possessed of a particular estate which the instrument purports to convey, it will be found an estoppel against the grantor. The instrument need contain no technical covenants for title; if it bears on its face evidence that the grantor intended to convey and the grantee expected to become vested with an estate of a particular description or quality, and that the bargain had proceeded on that footing, it creates an estoppel against the grantor in respect of the estate thus described, although no technical covenants are inserted. * * *"

The cases pro and con may be found in the following Annotations: 25 A.L.R. 83, 44 A.L.R. (particularly pertaining to quitclaim deeds) 1276, supporting the general rule that a quitclaim does not operate to pass an interest after-acquired, and 1279 listing the cases supporting the exception; 58 A.L.R. 360, Note 31, the general rule, and 363, Note 32, the exception. It would serve no useful purpose to review these authorities.

We think the case of Wise v. Watts, 9 Cir., 239 F. 207, 218, 152 C.C.A. 195, certiorari denied 244 U.S. 661, 37 S.Ct. 745, 61 L.Ed. 1376, (an appeal from the district court of Arizona to the 9th circuit), settles the problem before us. There the question of whether an instrument in the form of a quitclaim deed would carry after-acquired title was fully discussed and the authorities cited. We quote from the opinion:

"It almost goes without saying that the paramount object in the construction of a deed is to give effect to the intention of the parties to it. Authorities to that effect might readily be cited by the hundreds, but it is needless to consume space for that purpose. Such intention, of course, is to be gathered from a consideration of the entire instrument read in the light of the facts and circumstances under which it was executed.

\* \* \* \* \* \*

"Does not the deed from Watts to Hawley bear upon its face evidence that the grantor intended to convey, and the grantee expected to become invested with, the one tract of land therein undertaken to be conveyed? In our opinion, undoubtedly so. It is true that the words 'remise, release, and quitclaim' are used in the granting clause, but it is also true that so far from the deed purporting to remise, release and quitclaim only all the right, title, and interest of the grantor, it plainly manifests, we think, the intent of the grantor to convey, and of the grantee to receive and forever, by himself and his heirs and assigns, hold the property itself. \* \* \*

"In speaking of the difference between a deed in which the grantor only quitclaimed all of his interest in the land described in it and one in the form of a grant, bargain, and sale, the Supreme Court said, in the case of Moelle v. Sherwood, 148 U.S. 21, 29, 13 S.Ct. 426, 429, 37 L.Ed. 350:

" 'If the grantor in either case at the time of the execution of his deed possesses any claim to or interest in the property, it passes to the grantee. In the one case, that of bargain and sale, he impliedly asserts the possession of a claim to or interest in the property, for it is the property itself which he sells and undertakes to convey. In the other case, that of quitclaim, the grantor affirms nothing as to the ownership, and undertakes only a release of any claim to or interest in the premises which he may possess without asserting the ownership of either.' "

It must be borne in mind that Brown at the time of the execution of the first deed, as we have already shown, had a definite interest in the property which he could sell. At the time of the second instrument, his application for water right had been approved. The certificate thereafter issued was merely an evidence of his right then existing. The second deed would undoubtedly cover a half interest in the certificate. In the first deed it appears clearly, from the express terms thereof,

that Brown claimed an undivided one-half interest in the springs and other property. The recitations clearly indicate that Brown was claiming the water under an appropriation, and that by possession, control and use he had a vested interest therein. It, therefore, appears from the terms of the instrument that the parties to it considered that the grantor was seized and possessed of a particular estate, to-wit, ownership of the waters under appropriation, possession and use. It is obvious, too, from the face of the instrument that Brown intended to convey, and that the grantee (plaintiff here) expected to become vested with the water right. Anyone reading this deed would have notice that Brown claimed a definite legal interest in the waters, and that he had conveyed that definite legal interest to the grantee. Under such circumstances, where one has no interest in property, or only a partial interest, and the title does become vested in him, such after-acquired title passes to the grantee by way of estoppel. Weegens v. Karels, 374 Ill. 273, 29 N.E.2d 248, 250: " * * * Whatever the form or nature of the instrument, if it affirms, either by express terms or necessary implication, that the grantor is seized or possessed of a particular estate which the deed purports to convey, the grantor and all persons in privity with him are estopped from afterwards denying it. (Citing cases). The reason, in such a case, is that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, hence the grantor, and those in privity with him, in good faith and fair dealing should be forever thereafter precluded from gainsaying it. (Citing cases)."

The statements in the deed, referring to the appropriation, possession and use of water is in effect a warranty that the grantor not only claims but owns the rights to the waters. If, in fact, he had no such title when by proper application to the water commissioner he acquired such title, it would inure to the benefit of his grantee. 31 C.J.S., Estoppel, § 21, p. 203, § 26, p. 207; Thompson on Real Property, Perm.Ed. vol. 5, §§ 2609, 2611.

We cannot read into the deed from Brown to the plaintiff an intent on the part of Brown, for a valuable consideration, to merely release any interest that he may have had in the water at the time the deed was given, and reserve the right to use his property, improvements and possession which he had sold to the plaintiff as a basis of securing a title adverse to that which he had deeded to his grantee. We quote with approval from the case of Midland Realty Co. v. Halverson, 101 Mont. 49, 52 P.2d 159, 161: "The modern trend of the courts has been to accept the broad doctrine of the intention of the parties appearing from all the terms and provisions of the conveyance, as controlling regardless of the presence or absence of any special covenant. The great weight of modern authority supports the principle that, what-

ever the form or nature of the conveyance, if the grantor recites on the face of the instrument, either by express terms or necessary implication, that he is seized or possessed of a particular estate which the deed purports to convey or the mortgage to encumber, the grantor and all persons in privity with him are estopped from afterwards denying the same or asserting the title subsequently acquired by the grantor would not inure to the benefit of the grantee. Note, 58 A.L.R. 381."

The presumption must be that Brown was possessed of an honest intention, and obviously the plaintiff assumed that he was securing a good title. The intention of the parties is apparent that Brown was conveying not only his present right to the water and property, but also the right to use his possession and the property so conveyed as a basis for securing a lawful appropriation in the waters in question. We think it unnecessary to cite any authorities to the effect that the second deed covered Brown's remaining half interest in the certificate of title. As heretofore stated, that deed was not executed and delivered until after the application had been approved.

This is an equity case. It seems obvious from the testimony that the defendant not only was advised by the recitals in the instrument that the plaintiff was the owner of the water right, but also that he had actual knowledge, through plaintiff's application for grazing permit,

that the latter was claiming title to the water. It is our view that the testimony adduced on behalf of the plaintiff entitled him to the relief prayed for in his complaint. The facts and circumstances would appear to bar the defendant from the affirmative relief which he sought in the action. With knowledge of plaintiff's rights and claims so acquired in an official position, defendant sought to defeat plaintiff's title by a purchase from Brown in October following the issuance and recordation of the water right certificate. Equity will not grant relief to "one who has been wanting in good faith or good conscience or in fair dealing." 30 C.J.S., Equity, § 95, p. 482, § 96, pp. 485, 486; Smith v. Brimson, 52 Ariz. 360, 80 P.2d 968.

The judgment is reversed and the cause remanded with directions to enter judgment on behalf of plaintiff, and denying defendant affirmative relief.

LaPRADE, J., concurs.

STANFORD, Chief Justice (dissenting).

On February 7, 1938, William M. Brown gave unto the plaintiff a quitclaim deed for all of his right, title and interest in the property involved. In that deed he states: "The Grantor claims that an undivided one-half of the said springs, and the Pipe Line, Reservoirs two in number togather with the Lumber Cabin, which was used as a dwelling, two correls and the fencing arround the large reservoir. Belongs to him and he

made it his home from the year 1915 up to the month of January, 1929, Since which time he has used and controlled the waters and improvements every since he left the place and had renters on the property and still claim the right to all the improvements and waters as against every one except the Government of the United States of America."

He admitted thereby that he owned but a one-half interest. On April 21, 1938, he made application for a permit to appropriate public waters of the State of Arizona, and the Water Department, on November 1, 1938, issued a permit and a certificate of water right was issued on June 26, 1939. The application for a permit to appropriate public waters asked for 1,000 gallons per day for domestic use and 1,800 gallons per day for stock watering purposes. Both the permit and the certificate of water right granted 300 gallons per day for domestic use and 1,500 gallons per day for stock watering purposes. On March 29, 1939, after initiating the application to appropriate water under the state law, Brown gave his second quit claim deed to Hamblin, which read, in part, as follows: "The one-half interest in what is known as the Hod Brown, Springs, situated in House Rock Valley, Coconino County and State of Arizona, and described in that certain water certificate issued by the Permit No. A—1184 and Application No. A—1885, for the Hod Brown Springs described as being in the SW Section Corner of Section 13. Township 39 North, Range 3 East. G. &

S. R. Meridian, more fully described as Hod Brown Spring, also the North Cliff Dweller Spring, and the South Cliff Dweller Spring, * * *"

On the top of the application to appropriate water and on top of the certificate there appears a notation reading as follows: "One-half interest under this certificate of water right are assigned to Delwin F. Hamblin."

This notation was in keeping with a notation made by the water commissioner on the back of the second quitclaim deed, the deed being dated March 29, 1939, which notation is as follows: "The foregoing assignment is hereby approved this 16 day of April, 1940. Jesse C. Wanslee, State Water Commissioner."

.Under testimony given by the engineer for the State Land Department the assignment just referred to was transmitted to the Water Department by one of the attorneys for Mr. Hamblin on April 15, 1940.

The majority opinion herein states: "On June 26, 1939, the water commissioner issued to Brown a formal certificate of water right, confirming his right to the water described in the application and permit." As seen by the foregoing figures the grant of water to the applicant Brown was not the same in his certificate as it was in his application.

Further in the majority opinion it is said: "Brown, by settlement and making improvements on the public domain and in actually

developing and putting water to use, had an interest which was subject to conveyance."

It is my theory of the case that Brown always recognized that others had an interest in the springs. That is shown although no new application for water to the water commissioner was ever made, by the fact that William Ford on December 20, 1915, filed the following notice with the county recorder of Coconino County, Arizona: "Notice is hereby given that I the undersigned, have posted this notice at the Cliff *Dwelers* Spring, situated about two and one half (2½) miles south of the Old House Rock Spring in Coconino Co. Arizona. The water of this seep or spring is to be piped down and put into a reservoir, for stock watering purposes. Signed: Wm. Ford"

The family of William Ford on March 14, 1942, gave unto plaintiff Royal B. Woolley a quitclaim deed for "all the right, title, claim and demand" which they had in the water and water rights in question. That deed was signed by Florence Monroe, formerly the widow of William Ford, and by Grayson Ford, Lowell Ford and Miles Ford, being the only heirs at law of William Ford, deceased. Also J. M. Johnson, G. W. Findlay, and Dana Findlay on February 27, 1941, quitclaimed to Woolley any interest they might have in and to the water and water rights of the springs in question. Also Charles H. Vaughn on February 14, 1942, quitclaimed to defendant Woolley any right, title and interest he had in and to the water and water rights in

question. These quitclaim deeds conveyed also any interest the parties had in and to the reservoirs, troughs and other improvements. Also on October 14, 1939, William M. Brown, who had made his two quitclaim deeds to Hamblin, conveyed to Royal B. Woolley all the right, title, interest, claim and demand which he had in the property, the description therein being: "Those certain waters and water right known as Hod Brown Spring, North Cliff Dweller And South Cliff Dweller Springs, as evidenced by Certificate of Water Right, Certificate Record No. 755, issued on June 26, 1939, by the State Water Commissioner of the State of Arizona, to William M. Brown, the party of the first part; Recorded in State Record of Water Right Certificates in Volume 3, at page 755, and recorded in the office of the County Recorder of Coconino County, Arizona, in Book 5, of Millsites and Water Rights at pages 446 to 448 inclusive, and the reservoirs, pipe lines, troughs and other improvements, constructed and maintained for the diversion and use of said waters, said waters and improvements being situate in the Northwest quarter of the Southwest quarter of Section 13, and the Southeast quarter of Section 14, in Township 39 North of Range 3 East G. & S. R. M., Arizona."

In this last deed Brown recognized his interest in the water and springs as awarded unto him by the certificate issued by the water department on June 26, 1939. This

deed was duly recorded in Coconino County, Ariz.

The first deed to Hamblin from Brown was never recorded and the different transactions indicate that the second deed given by him to Hamblin was to carry out and fulfill the transfer in the first deed for a one-half interest.

Hamblin must prevail on the strength of his own title, and he has not carried that burden required by law. If he owned any more than a one-half interest the records would show it.