221 P.2d 438 (1950)
HENNINGSEN
v.
STROMBERG et al. AVARE et al.
v.
ANACONDA COPPER MIN. CO.
No. 8892.
Supreme Court of Montana.
Submitted September 29, 1949.
January 13, 1950.
As Amended July 17, 1950.
As Amended on Denial of Rehearing August 22, 1950.
*440 Ralph J. Anderson, Albert C. Angstman, Helena [Mr. Anderson argued the case orally] for appellant.
Arthur P. Acher, Helena, Charles L. Zimmerman, Butte, for Katherine Avare.
Howard A. Johnson, Butte, for McCarthy.
George D. Toole, Butte, for Dorais and others.
Robert G. Dwyer, W. M. Kirkpatrick, W. H. Hoover, R. H. Glover, John V. Dwyer, J. T. Finlen, Jr., Butte, for Anaconda Copper Min. Co.
Mr. Johnson, Mr. Acher, Mr. Zimmerman and Mr. Robt. G. Dwyer argued the case orally for respondents.
T. B. Weir, Helena, for amicus curiae,
BOTTOMLY, Justice.
Action by the plaintiff, Phyllis M. Henningsen, to quiet title to three mining claims, namely, the Frenchman No. 2, Missouri Girl and Rear Stake, located in Silver Bow county, Montana. There are numerous defendants named in the complaint. The action is brought under the authority of Chapter 198, Laws of 1937, and the provisions of Chapter 63 of the Code of Civil Procedure of 1935.
The answering defendants were: Katherine Avare, Elinor G. McCarthy, Anaconda Copper Mining Company, a corporation, Eugene Albert Dorais, Mrs. Eugene Albert Dorais, Charles Edouard Dorais, Mrs. Charles Edouard Dorais and Joseph Dorais Wilson. The defaults of all other defendants have been entered.
The judgment entered on the 15th day of October 1948, decreed the Anaconda Copper Mining Company, a corporation, as the sole and exclusive owner in fee simple of an undivided one-fourth interest in and to the Frenchman No. 2 Quartz Lode mining claim, designated by the surveyor-general as lot or survey No. 6518; that subject to the foregoing one-fourth interest, the following persons are the owners in fee simple of and entitled to the possession of the property in the interests set opposite their respective names:
Katherine Avare 130,491/2/247,2361/2
Phyllis M. Henningsen 114,239/247,2361/2
Elinor G. McCarthy 2,500/247,2361/2,
and that all other defendants and all other persons, known or unknown, not thereinbefore named are without any right whatever and have no right, title, interest, claim or estate whatsoever in or upon said real property, or any part thereof.
The only parties before this court are Phyllis M. Henningsen, Katherine Avare, Elinor G. McCarthy and the Anaconda Copper Mining Company, a corporation.
This appeal is divided into two parts: First, the validity of the judgment and decree granting to the Anaconda Copper Mining Company, a corporation, the fee in and to an undivided one-fourth interest in the Frenchman No. 2 Quartz Lode mining claim. From this part of the judgment the plaintiff appeal, so likewise do the defendants Katherine Avare and Elinor G. McCarthy. This phase of the case we will proceed to dispose of first.
The execution of the articles of incorporation of the Butte Copper King Mining Company was acknowledged on April 19, 1906, and filed for record in the office of the clerk of Silver Bow county, Montana, on April 20, 1906, and in the office of the *441 secretary of state of April 25, 1906. A. P. Henningsen, Henry Avare and D. Dorais were three of the incorporators and directors of the corporation. The corporation was organized for the purpose of carrying on a general mining business, of buying, selling, leasing and developing mines and mine property.
It appears from the evidence that the major purpose of the corporation at the time it was incorporated was to become the owner of those three lode claims known as the Missouri Girl, Rear Stake and Frenchman No. 2, situated in Silver Bow county, Montana.
Under date of April 9, 1904, and filed for record May 19, 1906, the United States of America issued patent, mineral certificate No. 4245, conveying the Frenchman No. 2 lode mining claim to John N. Kirk, Donat Dorais, Samuel D. Sumwalt and Martin Johnson. This is the only claim we are concerned with under this phase of the case.
Under date of March 16, 1906, Samuel D. Sumwalt conveyed a one-fourth interest in the Frenchman No. 2, Survey No. 6518, and other property, to D. Dorais.
Under date of April 26, 1906, D. Dorais, John N. Kirk and Henry Avare, and their respective wives, executed a deed to the Butte Cooper King Mining Company. The granting clause of this deed is as follows: "Remise, release and forever quitclaim unto the said party of the second part, and to its successors and assigns forever, all the following described property, situated in Silver Bow county, Montana, and bounded particularly described as follows, to-wit:
"The Rearstake Lode, Survey No. 6620, the Missouri Girl Lode, Survey No. 6619, and Frenchman No. 2, Survey No. 6518, excepting and reserving, however, from this conveyance, three several portions of the surface of the said property described as follows, to-wit: (The descriptions of the reservations are then set forth.)
"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.
"To Have and to Hold all and singular the said premises together with the appurtenances unto the said party of the second part, and to his heirs and assigns forever."
Under date of May 18, 1906, Martin Johnson et ux. conveyed all their right, title and interest in and to the Frenchman No. 2 to D. Dorais.
On July 18, 1913, D. Dorais died, his estate was probated and no mention of any interest in the Frenchman No. 2 Lode was made in said proceeding, nor is there any evidence that D. Dorais, during his lifetime, ever asserted any claim to this one-fourth interest, nor is there any evidence that any of his heirs asserted any such claim until 1945.
On October 28, 1929, Josephine Dorais, wife of D. Dorais, died. In 1945, some sixteen years later, her estate was probated, and as an asset of said estate the one-fourth interest in the Frenchman No. 2 was administered resulting in its sale to F. B. Winger, by administrator's deed, dated May 14, 1945, filed May 16, 1945.
May 16, 1945, F. B. Winger et ux. conveyed the one-fourth interest in the Frenchman No. 2 to Anaconda Copper Mining Company for a consideration of $1. Upon this deed the Anaconda Company founded their ownership to a one-fourth interest.
Plaintiff's contention is that the deed from D. Dorais et al. dated April 26, 1906, to the Buttle Copper King Mining Company, conveyed the land itself and not just the grantor's interest in the property, and therefore passes after-acquired title.
Defendant Anaconda Copper Mining Company contends that the said deed from D. Dorais et al. to Copper King Mining Company was a quitclaim deed only and therefore does not pass after-acquired title.
The sole question in this particular phase of the case is whether the deed from Dorais, Kirk, Avare and their respective wives to the Butte Copper King Mining Company passed the fee together with the undivided one-fourth interest in the Frenchman No. 2 which Dorais acquired from Johnson some twenty-two days after he had conveyed to the Butte Copper King Mining Company.
*442 "It is elementary that in construing the terms of a deed the court must, if possible, ascertain the intention of the parties to the sale as expressed by the deed." Hollensteiner v. Missoula Lumber Co., 37 Mont. 278, 283, 96 P. 420, 421.
The general rule as stated in C.J.S. is: "The main object in construing a deed is to ascertain the intention of the parties from the language used and to effectuate such intention where not inconsistent with any rule of law." 26 C.J.S., Deeds, § 83, page 324; Cobban Realty Co. v. Chicago, M. & St. P. R. Co., 58 Mont. 188, 191, 190 P. 988.
"The tendency of modern decisions is to disregard technicalities and to treat all uncertainties in a conveyaance as ambiguities subject to be cleared up by resort to the intention of the parties as gathered from the instrument itself * * *" 16 Am.Jur., Deeds, sec. 168, p. 532; Krutzfeld v. Stevenson, 86 Mont. 463, 475, 284 P. 553.
"The general rule is well settled that if there is any ambiguity in a deed so that it is capable of two possible constructions, one of which will be more favorable to the grantee, the other of which will be more favorable to the grantor, that method of construction which will be more favorable to the grantee will be selected and the deed will be construed against the grantor. All doubts, therefore, are to be resolved against the grantor. The rule is statutory in some jurisdictions. The rule is predicated upon the reasoning that since a grant is expressed in words of the grantor's own selection, it is, prima facie, an expression of his intention, and he is therefore chargeable with the language used." 16 Am.Jur., Deeds, sec. 165, p. 530.
The foregoing rule is expressed in section 6852, R.C.M.1935, as follows: "A grant is to be interpreted in favor of the grantee, except that a reservation in any grant, and every grant by a public officer or body, as such, to a private party, is to be interpreted in favor of the grantor." See Story v. Woolverton, 31 Mont. 346, 354, 78 P. 589; Mineral County v. Hyde, 111 Mont. 535, 111 P.2d 284; U. S. v. Eldredge, D.C., 33 F.Supp. 337.
It is to be noted that this deed purported to convey to the party of the second part and to its successors and assigns forever, all the described property, to have and to hold all the said premises unto the said party of the second part, and to his heirs and assigns forever.
Section 6867, R.C.M.1935, provides: "Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors."
Keeping in mind the foregoing principles of law and the statutory provisions, we find the deed under consideration from Dorais, Avare and Kirk, and their respective wives, to Butte Copper King Mining Company, in its granting clause, provides: "Remise, release and forever quitclaim unto the party of the second part, and to its successors and assigns forever, all the following described property, situated in Silver Bow County, Montana, and bounded particularly as follows, to-wit: (Here follows the description of the Frenchman No. 2, Survey No. 6518, and other properties.) Excepting and reserving, however, from this conveyance, three several portions of the surface of the said property described as follows, to-wit: * * *"
Does this granting clause purport to grant the property itself or only the right, title and interest of the grantors in the property at the time of the execution of the instrument.
"A fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended." Sec. 6866, R.C.M.1935.
A deed conveying "All that real property * * * described as follows: * * *", expresses an intention to grant the fee, or the entire estate, in whatever is described. See Van Slyke v. Arrowhead Reservoir & Power Co., 155 Cal. 675, 102 P. 816, 817, 818.
*443 The habendum clause of the deed provides: "Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.
"To have and hold all and singular the said premises together with the appurtenances unto the said party of the second part, and to his heirs and assigns forever." (Emphasis supplied.)
It has been stated that the habendum clause is the clause in a deed, usually following the granting of the premises, which defines the extent of the ownership in the thing granted, to be held and enjoyed by the grantee. Black's Law Dictionary; New York Indians v. U.S., 170 U.S. 1, 18 S.Ct 531, 42 L.Ed. 927; Krutzfeld v. Stevenson, supra.
If the deed purports and is intended to convey only the right, title and interest in the land, as distinguished from the land itself, it comes within the terms of a quitclaim deed, but if it appears that the intention was to convey the land itself, then it is not a quitclaim deed, although it may possess characteristics peculiar to such deeds. The use of the word "quitclaim" does not restrict the conveyance if other language is employed in the instrument indicating the intention to convey the land itself.
As was stated by the Supreme Court of California in Van Slyke v. Arrowhead Reservoir & Power Co., supra, in interpreting a deed, "It purports to `grant' to said company `all that real property situated in the county of San Bernardino, state aforesaid, described as follows: * * *.'
"* * * It is obvious from the granting clause of the deed to the Arrowhead Reservoir Company that the intention was to convey the entire estate in the land privilege to use it for a reservoir and dam. A declaration of intention to `grant all that real property * * * described as follows: Being all of the land,' etc., cannot be understood otherwise than as an expression of intent to grant the fee, or the entire estate, in whatever is described."
Considering the deed as a whole, under the modern rules of construction as above set forth, together with the statutes, and from the language used, we think it is quite clear that it was the intention to convey and land itself and the deed was sufficient to pass after-acquired interest and title. Krutzfeld v. Stevenson, supra; Johannes v. Dwire, 94 Mont. 590, 23 P.2d 971; Wise v. Watts, 9 Cir., 239 F. 207, and cases therein cited.
This court has stated, "The modern trend of the courts has been no accept the broad doctrine of the intention of the parties appearing from all the terms and provisions of the conveyance, as controlling regardless of the presence or absence of any special covenant. The great weight of modern authority supports the principle that, whatever the form or nature of the conveyance, if the grantor recites on the face of the instrument, either by express terms of necessary implication, that he is seised or possessed of a particular estate which the deed purports to convey or the mortgage to encumber, the grantor and all persons in privity with him are estopped from afterwards denying the same or asserting the title subsequently acquired by the grantor would not inure to the benefit of the grantee. Note 58 A.L.R. 381." Midland Realty Co. v. Halverson, 101 Mont. 49, 54, 52 P.2d 159, 161. (Emphasis supplied.)
In ascertaining whether a particular instrument passes after-acquired title, this court has applied the principle announced in Van Rensselaer v. Kearney, 11 How. 297, 13 L.Ed. 703, as follows: "The principle deducible from these authorities seems to be, that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seised or possessed of a particular estate in the premises, and which estate the deed purports to convey, or, what is the same thing, if the seisin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that *444 he was so seised and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after-acquired title as between parties and privies." Midland Realty Co. v. Halverson, supra.
In Wise v. Watts, supra, the granting and habendum clauses of the deed under consideration were as follows [239 F. 215]: "* * * remise, release and quitclaim unto the said party of the second part, and to his heirs and assigns, forever, all that certain tract * * * together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining * * * to have and to hold all and singular the above-mentioned and described premises, together with the appurtenances, unto the said party of the second part, his heirs and assigns forever."
The court, after quoting from Van Rensselaer v. Kearney, supra, stated: "Does not the deed from Watts to Hawley bear upon its face evidence that the grantor intended to convey, and the grantee expected to become invested with, the one tract of land therein undertaken to be conveyed? In our opinion, undoubtedly so. It si true that the words `remise, release, and quitclaim' are used in the granting clause, but it is also true that so far from the deed purporting to remise, release, and quitclaim only all the right, title, and interest of the grantor, it plainly manifests, we think, the intent of the grantor to convey, and of the grantee to receive and forever, by himself and his heirs and assigns, hold the property itself. Not purporting to convey only all the right, title, and interest of the grantor, the deed in terms remised, released, and quitclaimed to the party of the second part thereto, and to his heirs and assigns forever, all of that certain tract of land described. * * *
"As has been seen, the deed from Watts to Hawley did not undertake to quitclaim only the interest of the grantor in the land described therein, but, on the contrary, and for the reasons stated, undertook, as we think, to convey the land itself. That being so, that such title as Watts afterwards acquired to the tract in controversy * * * inured to the benefit of Hawley and his assigns is clear upon well-settled principles." Wise v. Watts, 9 Cir., 239 F. 207, 221, 222, certiorari denied 244 U.S. 661, 37 S.Ct. 745, 61 L.Ed. 1376; West Seattle Land & Improvement Co. v. Novelty Mill Co., 31 Wash. 435, 72 P. 69; In re Wilson's Estate, 40 Cal.App.2d 229, 104 P.2d 716, 718; 58 A.L.R. 361, note; Lindsay v. Freeman, 83 Tex. 259, 18 S.W. 727.
"With reference to the effect of language used in the habendum clause of a deed, the more liberal rule applied in the recent cases indicates that, in certain situations, the language in the habendum may serve to transform what would otherwise be merely a quitclaim because of the premises into a conveyance of the fee simple absolute." 16 Am.Jur., Deeds, sec. 226, p. 563; see Van Rensselaer v. Kearney, supra; Bradley v. Fackler, 13 Wash.2d 614, 126 P.2d 190; West Seattle Land & Improvement Co. v. Novelty Mill Co., supra.
In the instant deed there was a reservation and exception of certain surface tracts which had been previously conveyed. This is a further indication of the grantor's intention to convey the property itself. Van Rensselaer v. Kearney, supra.
The Supreme Court of Washington, in considering a similar deed, stated, "Appellant next contends that The Gold Bond Mining Company took no title under its quitclaim deed from Edwards, because that deed was executed and delivered to the corporation before Edwards himself acquired title to the property from Mrs. McKay. It is true that Edwards' deed to the corporation antedated that whereby Mrs. McKay conveyed her interest in the mine to him, but the deed to The Gold Bond Mining Company was more than a mere statutory quitclaim deed and was therefore not subject to the limitations imposed upon that type of conveyance. Edwards' deed contained the `to have and to hold' clause set out above and purported to `grant, bargain, sell, remise, release and forever quitclaim' the property here involved. * * * We therefore hold that the deed from Edwards to The Gold Bond Mining Company conveyed the title which Edwards subsequently *445 acquired from Mrs. McKay." Bradley v. Fackler, [13 Wash.2d 6114, 126 P.2d 194] supra.
The Supreme Court of Arizona, in Hamblin v. Woolley, 64 Ariz, 152, 167 P.2d 100, 104, interpreting a deed, stated, "We think the case of Wise v. Watts, 9 Cir., 239 F. 207, 218, 152 C.C.A. 195, certiorari denied 244 U.S. 661, 37 S.Ct. 745, 61 L.Ed. 1376, (an appeal from the district court of Arizona to the 9th circuit), settles the problem before us. There the question of whether an instrument in the form of a quitclaim deed would carry after-acquired title was fully discussed and the authorities cited." The court quoted with approval from Midland Realty Co. v. Halverson, supra.
Respondent Anaconda Copper Mining Company has cited many cases in support of its contention that the deed in question is merely a quitclaim deed and therefore does not pass after-acquired title, among them Lodge v. Thorpe, 120 Mont. 226, 181 P.2d 598, 599. However, the deed there considered contained, "all of my right, title and interest" clause and as the court pointed out, said deed "is a quitclaim deed without any habendum clause and purports to convey only the grantor's interest in the property." (Emphasis supplied.)
In Sharples Corporation v. Sinclair Wyoming Oil Co., 62 Wyo. 341, 167 P.2d 29, 168 P.2d 565, the deeds there considered were drawn in pursuance to and in conformity with a written agreement between the parties. The intention of the parties to release only their interests in the property by quitclaim deeds was clearly expressed in the written agreement.
We have examined the other cases cited, many of which are from Missouri and Arkansas where special statutes control. We hold that they are not applicable here as authority for the holding that the deed under discussion is a mere quitclaim deed and does not pass an after-acquired title. Here it is apparent that the form and substance of the instrument in question, take it beyond the limitations of merely a quitclaim deed.
In conformity with our statutes, principles of law laid down in Van Rensselaer v. Kearney, Wise v. Watts, Midland Realty Co. v. Halverson, and Krutzfeld v. Stevenson, supra, which we consider set forth the weight of authority, the intention expressed in the deed, we hold that the deed in question was more than a quitclaim deed. It conveyed the property itself and is sufficient to pass after-acquired title. That being so, such title as D. Dorais afterward acquired from Martin Johnson et ux. inured to the benefit of the Butte Copper King Mining Company and its assigns, and D. Dorais, his heirs and assigns, were and are estopped from asserting any claim thereto. Wise v. Watts, supra, and cases therein cited.
Accordingly that portion of the judgment and decree which provides "That the Anaconda Copper Mining Company, a corporation, is the sole and exclusive owner in fee simple of an undivided one-fourth (¼) interest in the Frenchman No. 2 Quartz Lode Mining Claim, designated by the Surveyor General as Lot or Survey No. 6518, embracing a portion of section 11, in Township 3 North, Range 8 West, Montana Principal Meridian, in the Summit Valley Mining District in the County of Silver Bow, State of Montana, hereinafter more particularly described," and that part of said judgment and decree providing, "That subject to the undivided one-fourth (¼) interest of the Anaconda Copper Mining Company, a corporation, in and to the Frenchman No. 2 Lode Mining Claim as aforesaid," is reversed and the cause remanded to the district court with directions to strike the above quoted parts of said judgment and decree and enter judgment therein in conformity herewith.
We now proceed to determine the question of ownership of the capital stock of the Butte Copper King Mining Company, a dissolved corporation, which presents the second phase of this case.
Phyllis M. Henningsen, widow of A. P. Henningsen, deceased, who died November 7, 1927, a successor in interest of all of the property of which the said A. P. Henningsen *446 died seized, including his capital stock in the Butte Copper King Mining Company, brought this action under the provisions of Chapter 63 of the Civil Code of Procedure as authorized by section 1, Chapter 198, Laws of 1937, for the purpose of determining the ownership of three mining claims located in Silver Bow county, described as the Missouri Girl, Rear Stake and Frenchman No. 2, all standing in the name of the corporation. From an adverse judgment the plaintiff appeals.
The default of all nonappearing defendants was duly entered and those other defendants who did appear were found to have no interest.
The defendant Katherine Avare, widow of Henry Avare, deceased, who died November 30, 1918, a successor in interest of all the property of which the said Henry Avare died seized, including his capital stock in the Butte Copper King Mining Company, by her amended answer filed in open court, the affirmative allegations thereof being by the plaintiff denied, asserted ownership of 152,1641/2 shares of the capital stock of said corporation and claimed to be the owner of the property described in plaintiff's complaint, in the proportion that 152,1641/2 shares bears to the total established ownership of shares.
The defendant Elinor G. McCarthy in her answer asserted ownership of an undivided 2,500/277,702 interest in and to the property described in plaintiff's complaint. Plaintiff in her reply thereto, admitted that the said Elinor G. McCarthy has an interest in the Butte Copper King Mining Company equal to the proportion which 2,500 shares bears to the total stock ownership. No party has disputed her interest in that many shares of stock.
There being no dispute as to Elinor G. McCarthy's 2,500 shares, the controversy narrows down to the question of the amount of stock which the plaintiff, Phyllis M. Henningsen, established ownership and the amount of stock to which the defendant, Katherine Avare, established ownership, in accordance with the provisions of section, 1, Chapter 198, Laws of 1937.
The evidence is primarily documentary.
Plaintiff introduced in evidence an abstract of title covering Frenchman No. 2, Missouri Girl and Rear Stake mining claims certified down to the 19th day of June 1945, by the Western Abstract and Title Company and a continuation abstract for the same property certified from June 19, 1945, to the 7th day of November 1946.
The deposition of Phyllis M. Henningsen, hereinafter referred to as the plaintiff, was introduced in evidence. She introduced in evidence Stock Certificates Nos. 37, 40, 41, 42 and 78 of the Butte Copper King Mining Company, amounting in all to 286,739 shares. Plaintiff identified the signatures on each certificate as being the signatures of the president and secretary of the corporation. She further identified the endorsements of A. P. Henningsen and the executors of his estate on certificate No. 78.
The will of A. P. Henningsen, the order appointing executrix and executors of his estate, the oath of executrix and executors, letters testamentary and the resignation of plaintiff as executrix are in evidence showing certificate No. 78 was duly endorsed to the plaintiff by the executors of the estate of A. P. Henningsen, deceased.
One Sherman L. Snyder, at all times working for and on behalf of plaintiff, paid the taxes on the property for the years 1925 to 1947, except that the taxes for the years 1946 and 1947 on Frenchman No. 2 were paid by the defendant, Anaconda Copper Mining Company.
Katherine Avare introduced in evidence certificates Nos. 74 and 75 for 500 and 102 shares, respectively, issued to H. R. Bartlett on May 21, 1915, and by him endorsed in blank June 21, 1915. These certificates were found in Henry Avare's bank box after his death. Plaintiff admits that Katherine Avare is the owner of a one-half interest therein, amounting to 301 shares, claiming the remaining one-half interest therein amounting to 301 shares by virtue of the assignment dated February 17, 1941, of May Alice Avare and Robert Avare to Sherman L. Snyder of all of *447 their interest in the capital stock of the Butte Copper King Mining Company.
Katherine Avare also introduced in evidence, over objection of plaintiff, certain papers found among the possessions of her deceased husband, Henry Avare, after his death, bearing dates from the year 1906 to 1909 under which she asserts ownership, including a letter (Exhibit B) dated October 1, 1906, addressed to A. P. Henningsen, secretary of the Butte Copper King Mining Company, Butte, Montana, signed by D. Dorais, authorizing the secretary of the corporation, "subject to pooling arrangements" to issue stock to various persons in various amounts totalling 600,000 shares. Henry Avare is listed for 118,727 shares, D. Dorais for 192,572 shares, John Kirk for 106,099 shares, A. P. Henningsen for 30,000 shares and various other persons are named for various smaller amounts. Katherine Avare also introduced, over the objections of plaintiff, an assignment (Exhibit C) made in the year 1909 from D. Dorais to Henry Avare of 175,000 shares of the capital stock of the Butte Copper King Mining Company, also found among the possessions of her deceased husband after his death.
To the admission of each and all of said papers, plaintiff interposed numerous objections, which in the main go to the immateriality thereof; failure to lay the proper foundation therefor; their remoteness as to time and that none of said papers tend to prove ownership of said capital stock.
The stock book of the corporation, admitted without objection, shows by its stubs for certificates the issuance of various shares of stock, including 2,500 shares to D. Dorais 10,500 shares issued to Henry Avare, 602 shares issued to H. R. Bartlett (those represented by certificates Nos. 74 and 75), 286,739 shares issued to A. P. Henningsen (including certificate No. 78 for 156,739 shares transferred to A. P. Henningsen from Josephine Dorais) and other shares issued to various persons for various amountsthe latter not material or in issue.
The inventory and appraisement filed in the matter of the estate of Henry Avare, deceased, lists certificates No. 74 for 500 shares and No. 75 for 102 shares of the Butte Copper King Mining Company and 118,000 shares of said Butte Copper King Mining Company, all appraised at $5,000.
The decree of distribution in the matter of the estate distributes certificates No. 74 for 500 shares and No. 75 for 102 shares and 118,727 shares of the capital stock of the Butte Copper King Mining Company to Katherine Avare and Frank Avare share share alike.
The evidence further shows that on April 13, 1939, plaintiff entered into an agreement with Sherman L. Snyder, under the terms of which the said Sherman L. Snyder, among other things, was to perfect the title of plaintiff in the mining claims hereinbefore referred to. As a part of said agreement, the said Snyder was to acquire or cause to be acquired for plaintiff the outstanding stock of the corporation for cancellation.
Thereafter, February 17, 1941, Mary Alice Avare and Robert Avare (wife and son, respectively, of Frank Avare, deceased, a brother of Henry Avare, deceased, successor in interest of a one-half interest in all of the property of which the said Henry Avare died seized, including his capital stock in the Butte Copper King Mining Company), for a valuable consideration, assigned to Sherman L. Snyder all of their interest in the capital stock of the Butte Copper King Mining Company
The lower court entered its findings of fact and conclusions of law and entered its decree that the title to the Missouri Girl, Rear Stake and three-quarters interest in Frenchman No. 2 was divided as follows:
Phyllis M. Henningsen 114,239/247,236½
Katherine Avare 130,497½/247,236½
Elinor G. McCarthy 2,500/247,236½
From the judgment the plaintiff has appealed.
*448 The interest of the respective parties in all of the real estate in question must be determined under the provisions of Chapter 198, Laws of 1937, and depends upon their ownership of capital stock of the dissolved corporation.
It is of course well settled that a person may be the owner of stock in a corporation even though the certificates of stock have not been issued. Cotter v. Butte & Ruby Valley Smelting Co., 31 Mont. 129, 77 P. 509; Gallatin County Farmers' Alliance v. Flannery, 59 Mont. 534, 197 P. 996.
As above noted the corporation was organized in April 1906 to take over the mining claims owned by D. Dorais and others. The court properly received in evidence exhibit B above referred to, the same being the letter signed by D. Dorais and addressed to A. P. Henningsen relating to the proper distribution of the stock of the corporation.
The letter was written shortly after the corporation was formed. It was made to the secretary of the corporation by one of the owners of the property transferred to the corporation.
This declaration was so clase in point of time to the time when the corporation was formed and the property was transferred to the corporation that it constituted some evidence of the ownership of the stock at the time it was made. Compare Williams v. Gray, 62 Mont. 1, 203 P. 524.
But plaintiff contends that it is no proof of present ownership, the statement having been made in 1906. It is contended by plaintiff that even if it reflected the proper division of the stock in 1909, it is too remote in time to be of any evidentiary value as of the time of the trial.
Lapse of time standing alone is no bar to a stockholder's right to shares of stock. The rule is that the Statute of Limitations does not bar a claim for certificates of stock which were unissued until the stockholder is notified that his right to the stock is disputed. Commonwealth ex rel. Mercer County Court v. Springfield, M. & H. Turnpike Co., 10 Bush. 254, 73 Ky. 254; Wells v. Green Bay & Miss. Canal Co., 90 Wis. 442, 64 N.W. 69; Bedford County v. Nashville, C. & St. L. R. Co., 82 Tenn. (Lea.) 525; Kobogum v. Jackson Iron Co., 76 Mich. 498, 43 N.W. 602; Snyder v. Charleston & S. Bridge Co., 65 W. Va. 1, 63 S.E. 616, 131 Am.St.Rep. 947.
And proof by a party that the at one time owned stock in a corporation shifts the burden to the adversary to show that he parted with his title thereto before he can be deprived of the right to have certificates issued to him. Snyder v. Charleston & S. Bridge Co., supra.
According to exhibit B Henry Avare was entitled to 118,727 shares of stock.
The inventory and appraisement of the Henry Avare estate mentions the 118,727 shares of stock and the decree of distribution distributes to Katherine Avare and Frank Avare, a brother of deceased, these shares equally. Recitals in the inventory and appraisement and in the decree of distribution are not competent evidence that the deceased owned that amount of stock at the time of his death. In re Regnart's Estae, 102 Cal.App. 643, 283 P. 860; In re McCarthy's Estate, 127 Cal.App. 80, 15 P.2d 223; Malville v. Kappeler, 4 Cal. Unrep. 843, 37 P. 934.
A decree of distribution does not create title it does not transfer title. Upon the death of the testator the title to his property, both real and personal, vests immediately in the devisees and legatees. The court gives no title in its decree of distribution but merely determines the succession of such title as the decedent may have had. Gaines v. Van Demark, 106 Mont. 1, 74 P.2d 454; In re Clark's Estate, 105 Mont. 401, 74 P.2d 401, 114 A.L.R. 496; In re Estate of Deschamps, 65 Mont. 207, 212 P. 512.
It is a circumstance, however, that may be considered with exhibit B to show that the parties acted upon exhibit B and treated it as the proper basis for the distribution of the stock. Another circumstance of great weight is the fact that stock was actually issued to many of the persons named in exhibit B in the exact amount specified by it. Likewise, for the same reasons that exhibit B was admissible, so was the assignment, exhibit C above *449 from D. Dorais to Henry Avare, properly considered by the court.
The court properly determined Katherine Avare's interest to be represented by 130,497½ shares of stock. Likewise Elinor G. McCarthy's interest was represented by 2,500 shares. No one disputes that fact. The court however erred in limiting plaintiff to 114,239 shares.
We now come to the assignment of Mary Alice Avare and Robert Avare (successors in interest of Frank Avare, deceased, who was a brother of Henry Avare, deceased) to Sherman L. Snyder of all of their stock in the Butte Copper King Mining Company, admitted in evidence without objection. Katherine Avare contends that the stock acquired by Mr. Snyder did not inure to the benefit of the plaintiff but was automatically cancelled. Plaintiff contends that by reason of the assignment she is entitled, in addition to other shares claimed by her, to such additional shares of stock as the court finds Katherine Avare to be entitled to. It is to be remembered that plaintiff and Snyder entered into an agreement on April 13, 1939, under the terms of which Snyder, among other things, was to perfect the title of plaintiff in the mining claims hereinbefore referred to and to acquire or cause to be acquired stock for cancellation, which said contract appears in the abstract. (Exhibit 2.)
It is also to be remembered that Snyder was at all times working for and on behalf of plaintiff. He paid the taxes on the corporation property for plaintiff's benefit. Part of the consideration for the assignment from the heirs of Frank Avare was not to be paid until the ownership of stock by Avare would be recognized in court.
We believe that the proper construction to be placed on plaintiff's contract with Snyder is that Snyder was to acquire outstanding stock of the corporation for the benefit of the plaintiff, cause this suit to be brought wherein the stock was to be cancelled and the corporate property would be distributed in lieu thereof "to the persons who shall in such proceeding establish their ownership of capital stock of such corporation, pro rata, according to their respective stock ownerships, as so established in such proceeding." Ch. 198, Laws of 1937. Therefore we hold that plaintiff is the owner of additional shares in the amount equal to that found to be owned by Katherine Avare, namely 130,497½ shares.
The court rightly ignored certificate No. 78 for 156,739 shares issued to A. P. Henningsen on September 18, 1922. The stock book shows that this represented stock assigned by Josephine Dorais to A. P. Henningsen. D. Dorais died in 1913. Josephine Dorais was his sole heir. The record indicates clearly that Josephine Dorais never had any stock in the corporation other than that which she inherited from her husband's estate. But the court, on ample evidence, found that Dorais in his lifetime had assigned all the stock which he owned and hence Josephine Dorais had none to assign to A. P. Henningsen.
In other respects the court's conclusions were proper. We therefore hold that the interest of the parties in the property of the Butte Copper King Mining Company dependent upon their ownership of stock is as follows:
Phyllis M. Henningsen 244,736½/377,734
Katherine Avare 130,497½/377,734
Elinor G. McCarthy 2,500/377,734.
For the same reasons given the judgment of the lower court, as the same pertains to this, the second phase of this cause, is reversed and remanded with directions to enter judgment in accordance with this opinion.
It is ordered that, as above amended, the opinion be substituted for the majority opinion of the court heretofore pronounced.
ANGSTMAN and METCALF, JJ., concur.
ADAIR, Chief Justice (dissenting).
The facts in this case are simple. The law applicable is both elementary and fundamental. The principles which control are well established, commonly understood and almost universally accepted rules governing conveyancing.
The decree of the trial court, inter alia, adjudged that the respondent, Anaconda *450 Copper Mining Company, "is the owner in fee simple of an undivided one-fourth (¼) interest in and to the Frenchmen No. 2 Quartz Lode Mining claim, designated by the Surveyor General as Lot or Survey No. 6518, embracing a portion of Section 11, in Township 3 North, Range 8 West, Montana Principal Meridian, in the Summit Valley Mining District in the County of Silver Bow, State of Montana, hereinafter particularly described." This adjudication is fully sustained by both the evidence and the law.
Two abstracts of title received in evidence as plaintiff's Exhibits No. 1 and No. 2, respectively, show an unbroken chain of title to the above one-fourth interest commencing with the United States and ending in the Anaconda Copper Mining Company.
In the year 1898 four persons, viz., (1) John N. Kirk, (2) Samuel D. Sumwalt, (3) Donat Dorais, and (4) Martin Johnson, located the Frenchman No. 2 Quartz Lode Mining claim.
By a duly acknowledged declaratory statement dated, filed and recorded December 19, 1898, the four locators above named represented that each claimed an undivided one-fourth interest in said location.
By patent issued April 9, 1904, and recorded in Book "F" of Patents at page 134, records of Silver Bow county, Montana, the United States of America granted said quartz lode mining claim unto the four original locators, viz., (1) John N. Kirk, (2) Samuel D. Sumwalt, (3) Donat Dorais, and (4) Martin Johnson.
By mining deed dated March 16, 1906 and recorded April 27, 1906, Samuel D. Sumwalt, an unmarried man, did "grant, bargain, sell, remise, release, convey and quitclaim unto" Dorais all his "right, title and interest, estate, claim and demands" to certain described mining claims including "an undivided one-fourth interest in the * * * Frenchman No. 2, Survey No. 6518, situated in Summit Valley Unorganized Mining District, Silver Bow county, Montana."
The undivided one-fourth interest so acquired from Sumwalt added to the undivided one-fourth interest originally granted Dorais by the United States in the patent issued April 9, 1904, increased the interest of Dorais to an undivided one-half interest in the Frenchman No. 2. The patentee Sumwalt had the right to transfer to Dorais and the latter had the right to take and hold title to said undivided one quarter interest in said mining claim.
The original articles of incorporation of the Butte Copper King Mining Company, a corporation, dated April 19, 1906 and filed the following day, were signed by D. Dorais, Henry Avare and three other persons as directors of such corporation.
A week later by deed dated April 26, 1906 and subscribed by D. Dorais and wife, John N. Kirk and wife and Henry Avare and wife, said parties did "remise, release and forever quitclaim unto" said Butte Copper King Mining Company certain described mining claims and property including the Frenchman No. 2, Survey No. 6518, expressly excepting and reserving, however, from the conveyance those several portions of the surface of the property as described in said deed. Thus it appears that D. Dorais and Henry Avare, being two of the directors of the grantee mining company, then actually knew of the character, condition and extent of the title and interest of each of the parties who executed the deed to the grantee mining company so that such company could not have been misled by the language, terms or provisions of such quitclaim deed. See 31 C.J.S., Estoppel, § 67, page 254, note 47, citing among other cases: Mundt v. Mallon, 106 Mont. 242, 76 P.2d 326, and Lindblom v. Employers' Liability Assurance Corp., 88 Mont. 488, 295 P. 1007.
Again when D. Dorais and Henry Avare, together with John N. Kirk, et al., as grantors, made, executed and delivered to D. Dorais and Henry Avare, as directors of Butte Copper King Mining Company the quitclaim deed of April 26, 1906, Dorais and Avare knew full well their intentions and exactly what was sought to be accomplished by the writing. This they knew both as grantors and as directors of the grantee corporation. They selected the proper instrument and form of writing to effect a release and quitclaim and they thus evidenced their intention to quitclaim all *451 the title and interest which they then had in the described property. All Dorais and Kirk owned in the Frenchman No. 2 was an undivided three-fourths interest, subject to certain exceptions and reservations and only such interest was conveyed. Needless to say, such deed passed no title whatever to the undivided one-fourth interest owned by the patentee Martin Johnson.
In 3 Thompson on Corporations, 3d Ed., section 1779, at p. 349, it is said: "From these consideration it will be concluded, as a general rule, that knowledge of a single director, and especially when obtained by him while acting for the corporation, or when he is at the place of business of the corporation, and not acting for himself or adversely to the corporation, will be imputed to the corporation." (Citing cases in note 41.) See also, 3 Fletcher Cyclopedia Corporations, sec. 808, p. 74, and cases cited in note 23; R.C.M. 1947, § 94-2313, and Ely, Salyards & Co. v. Farmer's Elevator Co., 69 Mont. 265, 221 P. 522.
At the time of the above conveyance neither Lydia L. Kirk, Josephine Dorais, Anna H. Avare nor Henry avare had any present title or interest in or to the Frenchman No. 2. While Mrs. Kirk, Mrs. Dorais and Mrs. Avare joined in the deed executed by the husband of each their signatures passed no interest or title to the grantee but merely effected a release of the individual right of dower of each. Although Henry Avare had an interest in other mining claims described in the deed, yet the record before us shows that he had no title or interest whatever in the Frenchman No. 2.
Of the six persons who signed the deed to the Butte Copper King Mining Company only John N. Kirk and D. Dorais then had any title or interest in the Frenchman No. 2. Kirk then owned the undivided one-fourth interest granted him by the patent issued April 9, 1904, while Dorais then owned an undivided one-half interest represented (a) by the undivided one-fourth interest granted him by the patent of April 9, 1904, plus (b) the undivided one-fourth interest which he had acquired from Samuel D. Sumwalt by the deed of March 16, 1906. Kirk and Dorais had the right to transfer and the Butte Copper King Mining Company had the right to take and hold title to such respective undivided interests so conveyed.
The deed to the grantee company is manifestly a quitclaim deed. Nowhere does it employ the word "grant" or the words "bargain and sell." It says "remise, release and forever quitclaim" which operative words merely released, quitclaimed and effected the transfer of the three-fourth interest then owned by the grantors Kirk and Dorais in the described mining claim, and it did not and could not pass title to the other undivided one-fourth interest patented to and then owned by the patentee Martin Johnson.
In Lodge v. Thorpe, 120 Mont. 226, 181 P.2d 598, 599, this court quoted with approval from Williams v. Reid, Mo.Sup., 37 S.W.2d 537, as follows: "Probably nothing is better understood in the law of conveyancing than that a mere quitclaim deed transfers and is designed to transfer only such title and interest as the grantor had when he delivered the deed." Again in Gibson v. Morris State Bank, 49 Mont. 60, 140 P. 76, 80, this court said: "Though she paid full value, she accepted a quitclaim deed. This conveyed to her only such title as the bank had. Wetzstein v. Largey, 27 Mont. 212, 70 P. 717." See also, Butte Hardware Co. v. Frank, 25 Mont. 344, 353, 65 P. 1; 4 Tiffany on Real Property, 3d Ed., Sec. 1231, p. 642; 7 Thompson on Real Property, Perm.Ed., Secs. 3845 and 3846, pages 310 to 312; 16 Am.Jur., Deeds, Sec. 344, p. 636.
Regardless of the kind or character of deed employed to effect the transfer such instrument could convey no greater or better title than the grantors had. A quitclaim deed passes title as the grantor held it and the grantee takes only what the grantor could lawfully convey. McAdow v. Black, 6 Mont. 601, 608, 13 P. 377.
An inspection of the patent would have disclosed to any one Martin Johnson's undivided one-fourth interest in the property. An inspection of the county records *452 would have disclosed to any one the declaratory statement recorded December 19, 1898, in Book Q of Locations at page 39, wherein Martin Johnson claimed an undivided one-fourth interest in the Frenchman No. 2 so located by himself and the other patentees. Here no one was misled; no one labored under any mistake of fact. No fraud is claimed and the grantee is chargeable with the notice imparted to it by the county records and also with the actual knowledge of its directors Dorais and Avare that Martin Johnson owned and held an undivided one-fourth interest in the property. This undivided interest Johnson could lawfully convey to Dorais or any one else and such interest Dorais could lawfully take, hold, Rowell v. Rowell, 119 Mont. 201, 174 P.2d 223, 168 A.L.R. 1141, and add to the interest retained by him and excepted from the deed to Butte Copper King Mining Co. by the express exceptions set forth in the deed. "Whatever is excluded from the grant by exeception * * * remains in the grantor as of his former right or title and never passes to the grantee." City of Missoula v. Mix, Mont., 214 P.2d 212.
By deed dated May 18, 1906, Martin Johnson and wife conveyed to Dorais all their "right, title and interest in and to the Frenchman No. 2 Lode" being the above mentioned undivided one-fourth interest therein.
In 1913 Dorais died, whereupon his right and title to the undivided one-fourth interest in the Frenchman No. 2 lode so acquired from Johnson passed to Dorais' widow Josephine Dorais.
In 1929 Josephine Dorais died. Thereafter on sale held pursuant to court order and by an administrator's deed the said undivided one-fourth interest originally patented to Johnson and by him granted to Dorais was conveyed to F. B. Winger, grantee.
Thereafter by deed dated May 16, 1945, and filed for record January 16, 1946, F. B. Winger and wife, grantors, conveyed to the respondent Anaconda Copper Mining Company, grantee, such undivided one-fourth interest and all of their other and further right, title and interest in and to the Frenchman No. 2 Quartz Lode Mining claim.
Under the facts and circumstances which here obtain no statute, rule or principle estopped D. Dorais or his heirs or assigns from acquiring, owning, holding and asserting their title to the Martin Johnson one-fourth interest so conveyed by Johnson, et ux., to Dorais. Rowell v. Rowell, supra.
It is the general rule in most jurisdictions, in the absence of statutes to the contrary, that a quitclaim deed, containing neither covenants nor recitals showing, expressly or by implication, the existence of any estate or interest in the grantor, does not affect an after-acquired title, nor estop the grantor from asserting it. See Butte Hardware Co. v. Frank, supra; Wetztein v. Largey, 27 Mont. 212, 225, 70 P. 717; McAdow v. Black, supra; Gibson v. Morris State Bank, supra; Compare McAboy v. Packer, 353 Mo. 1219, 187 S. W.2d 207; Graham v. Quarles, 206 Ark. 542, 176 S.W.2d 703; Greek Catholic Congregation v. Plummer, 338 Pa. 373, 12 A. 2d 435, 127 A.L.R. 1008.
The deed to the Butte Copper King Mining Co. was not introduced in evidence, but plaintiff's Exhibit No. 1 sets forth the following abstract of such conveyance, viz:
"D. Dorais, and Josphine DEED
Dorais, his Dated April 26,
wife, John N. Kirk 1906.
and Lydia L. Kirk Filed April 27, 1906
his wife, and Henry at 4:24 P.M.
Avarre and Anna Recorded in Book
H. Avarre, his wife 74 of Deeds, page
 to 133 Records of Silver
"Butte Copper King Bow County,
Mining Co., Montana.
 Consideration $1.00
"Remise, release, and forever quitclaim unto the said party of the second part, and to its successors and assigns forever, all the following described property, situated in Silver Bow County, Montana, and bounded particularly described as follows, to-wit:
"The Rearstake Lode, Survey No. 6620, the Missouri Girl Lode, Survey No. 6619, and Frenchman No. 2, Survey No. 6518; *453 excepting and reserving, however, from this conveyance, three several portions of the surface of the said property described as follows, to wit:
"Lot situated on the Rearstake Lode, Survey No. 6620, beginning at corner No. 2 of said survey and running N. 44°40' E. 40 feet, thence North 2 45' W. 45 ft. thence S. 71°23' W. 152 feet, thence S. 190° 5' E. 71.6 feet, thence N. 60°55' E. 104 feet to said Cor. No. 2, and the place of beginning.
"Lot situated at the S.E. cor of the Missouri Girl Lodge; beginning at cor. No. 2 of Survey No. 6619, Missouri Girl Lode, and running S. 67°15' W. 100 feet; thence N. 24°45' W. 100 feet, thence N. 67°15' E. 100 feet, thence S. 24°45' E. 100 feet, to the said S.E. Corner No. 2, and the place of begining.
"Lot situated near the center of the Missouri Girl Lode; beginning at the S.E. Corner of the Lot herein described, from which corner No. 4 of survey No. 6518, Frenchman No. 2 Lode Bears S. 79°16' E. 194 feet, and running thence N. 45°51' W. 100 feet; thence S. 49 09' W. 100 feet; and thence S. 40°51' E. 100 feet; thence N. 79°09' E. 100 feet to the said S.E. Cor. and the place of beginning.
"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appeartaining.
"To Have and to Hold all and singular the said premises together with the appurtenances unto the said party of the second part, and to his heirs and assigns forever.
 "Lydia L. Kirk
 "John N. Kirk
 "Josephine Dorais
 "Henry Avare
 "Anna H. Avare
 "D. Dorais
"[Acknowledgment.]" (Emphasis supplied.)
The operative words employed in the above instrument are "remise, release and forever quitclaim." This brands the writing as a quitclaim deed. Such deeds have been in common use throughout this jurisdiction from the earliest territorial days. They are similar to the old deeds of release except the latter were effectual only in favor of one who had possession of the land or held some interest therein. "The modern quitclaim deed is lineally descended from a release, the styling, whether `quitclaim' or `release,' being derived from the operative words, `remise, release and forever quitclaim." 16 Am.Jur., Deeds, Sec. 18, p. 447. A quitclaim deed transfers whatever present right or interest the grantor has in the property. "* * * the usual words `remise, release, and quitclaim' are held sufficient to manifest the intention of the grantor to convey such interest to the grantee. Indeed, the words `remise, release and quitclaim' have been held to be synonymous, so that it would seem that one or more of these words would be effective." 16 Am.Jur., Deeds, sec. 52, p. 470.
The constant and immemorial usage in this jurisdiction of such written transfers of interests in real property as was employed in the conveyance to the Butte Copper King Mining Co. is sufficient to make it a part of the common law of this state. As was said in the early case of Bryan v. Bradley, 16 Conn. 474, 479, "`a deed of this description may be termed one of the common assurances of real estate.' As such, it stands on the same solid foundation as those common assurances in England, which derive their force and effect from long usage and recognition. On this ground alone, we do not hesitate to hold it good throughout, and should do so, even if it were found to trench upon the rules of the English common law, which, although perhaps anciently founded in practical and substantial reason and good sense, have now become merely technical and formal." See also, Bissell v. Grant, 35 Conn. 288, 297; Fish v. Sawyer, 11 Conn. 545, 550.
In holding a release and quitclaim valid although the release was not in possession, in Field v. Columbet, 9 Fed.Cas., No. 4,764, pages 12, 13, 4 Sawy. 523, 528, the court said: "It is equally effectual with either of the other forms in transferring existing interests. Such is the common opinion of the profession, and in consequence the quitclaim has become the form most generally in use. To hold that it has no efficacy, except *454 where the grantee is at the time in possession, would disturb titles to property of the value of millions."
As was said by Rood in his article on "The Statute of Uses and the Modern Trend" appearing in 4 Mich.Law Review, 107, at p. 114: "Several courts have declaredwith a simplicity that might startle the wise man filled with legal learning, but most acceptable to every one not sufficiently learned to have lost his common sense that the forms of conveyance in common and inveterate use ought to be, and will be, sustained, without much regard to the requirements of the ancient common law, or whether any statute has altered or abrogated such requirements."
In 1 Story on the Constitution, 5th Ed., sec. 174, p. 126, it is said: "From a very early period of their settlement the colonies adopted an almost uniform mode of conveyance of land, at once simple and practicable and safe. The differences are so slight that they became almost evanescent. All lands were conveyed by deed, commonly in the form of a feoffment, or a bargain and sale, or a lease and release, attested by one or more witnesses, acknowledged or proved before some court or magistrate, and then registered in some public registry. When so executed, acknowledged, and recorded, it had full effect to convey the estate without livery of seisin, or any other act or ceremony whatsoever. This mode of conveyance prevailed, if not in all, in nearly all of the colonies from a very early period, and it has now become absolutely universal. It is hardly possible to measure the beneficial influences upon our titles arising from this source, in point of security, facility of transfer, and marketable value."
In the United States simple short form deeds are everywhere expressly provided for by statute.
While the codes of Montana do not provide a form for quitclaims they do expressly provide for a statutory short form deed of grant and authorize its use in creating any estate which is recognized as valid under present law, giving to it all the effect of a duly executed common law conveyance with full covenants of warranty. See: R.C.M.1947, secs. 67-1602, 67-1609 and 67-1616. It must be observed, however, that section 67-1609, supra, speaks not of quitclaim or of a person who purports by proper instrument to quitclaim real property but expressly says: "Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors." (Emphasis supplied.) Thus it is clear that section 67-1609 is confined in its scope and application to grants or transfers effected by a "proper instrument to grant real property" and not to instruments to quitclaim or release.
The word "grant" as employed in R.C.M. 1947, sec. 67-1609, must be construed in connection with section 67-1616, supra, which inserts into the "grant" by operation of law the implied covenants there specified "and none other."
A number of states have gone considerably farther than Montana and have prescribed a form for a quitclaim.
In Indiana, Kansas and Michigan the form reads: "____ quitclaims to ____ (here insert the consideration). [Signature and acknowledgment]." Burns' Ann. St.Ind. § 56-116; G.S.Kan.1935, 67-204; Comp.Laws, Mich.1948, § 565.152.
In Utah the form reads: "____, grantor (insert here name or names and place of residence), hereby quitclaims to ____, grantee (here insert name or names and place of residence), for the sum of ____ dollars [&____] the following described tract ____ of land in ____ County, ____ (here describe the premises).
"Witness the hand of said grantor, this ____ day of ____ 19__. [Signature and acknowledgment]." U.C.A.1943, 78-1-12.
In Wisconsin the form reads: "____, grantor of ____ County, ____, hereby quitclaims to ____, for the sum of ____ dollars, the following tract of land in ____ County (here describe the premises).
"Witness the hand and seal of said grantor this ____ day of ____ 19--. *455 [Signature, seal, attestation by two witnesses, and acknowledgment.]" St.1947, § 235.06.
In New York the form reads: "This indenture, made the ___ day of ___, nineteen hundred and ___, between ___ (insert residence), party of the first part, and ___, (insert residence) party of the second part;
"Witnesseth, that the party of the first part, in consideration of ___ dollars, lawful money of the United States, paid by the party of the second part, does hereby remise, release, and quitclaim unto the party of the second part, ___ and assigns forever, all (description), together with the appurtenances and all the estate and rights of the party of the first part in and to said premises.
"To have and to hold the premises herein granted unto the party of the second part, ___ and assigns forever.
"In witness whereof, the party of the first part has hereunto set his hand and seal the day and year above written.
"In presence of." Real Property Law, McK.Consol.Laws, c. 50, § 258, Schedule G. See: 2 Walsh's Commentaries Law of Real Property, sec. 203, "Schedule G" pp. 395, 396.
In Pennsylvania the form reads: "This indenture, made the ___ day of ___, 19__, between ___, of ___, grantor, and ___, of ___, grantee, witnesseth, that the said grantor, for and in consideration of the sum of ___ dollars ($___) lawful money of the United States of America, to him well and truly paid by the said grantee, at and before the sealing and delivery of these presents, the receipts whereof hereby acknowledged, has remised, released, and quitclaimed, and by these presents does remise, release, and quitclaim unto the said grantee, and to his heirs and assigns, forever, all that parcel, etc.: together with all and singular the tenements, hereditaments, and appurtenances there-unto belonging or in anywise appertaining, and the reversions, remainders, rents, issues, and profits thereof; and also all the estate, right, title, interest, property, claim, and demand whatsoever, as well in law as in equity, of the said grantor, of, in, or to the above described premises, and every part and parcel thereof, with the appurtenances.
"To have and to hold all and singular the above mentioned and described premises, together with the appurtenances, unto the said grantee, his heirs and assigns, forever.
"[In witness whereof, etc.] [Signatures and seals] [Attestation and acknowledgment]" "See: 11 Thompson on Real Property, Perm.Ed., Form No. 624, pp. 225, 226.
Cowdery's Forms, so long relied upon and in common use by the attorneys engaged in the active practice of the law throughout the western states as to be often referred to as "The Lawyer's Bible," purports to set forth legal and business forms "adapted to use in Alaska, Arizona, California, Colorado, Hawaii, Idaho, Kansas, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington and Wyoming." At the bottom of page 629 of Cowdery's Forms, 5th Ed., revised by Curtis Hillyer, there is a note reading: "Note.  The short form of quitclaim deed, as found in Form No. 1230, is recommended." The recommended form reads:
"No. 1230. Quitclaim deed.
"Joseph Grand, for and in consideration of $10, does hereby remise, release, and quitclaim to Edward Hamond, all that real property situated in the county of San Diego, state of California, bounded and described as follows: [Description.]
"Witness my hand this 14th day of April, 1933.
 "Joseph Grand.
 "Signed and executed in presence of
 "Charles King.
 "Herbert Brown.
 "[Acknowledgment.]" (Emphasis supplied.)
In the introductory note to the chapter on "Deeds and Conveyances," Cowdery's Forms, Hillyer, 5th Ed., at pages 622, et seq., it is said:
"The essential parts of a conveyance of land in fee are very brief, and require but *456 few words. The short, plain form of a `grant,' as given in the California statute, is sufficient for every purpose. * * *
"It is generally provided by statute that every conveyance shall pass all the estate of the grantor unless the intent to pass a less estate shall appear by express terms, or be necessarily implied in the terms of the grant; and that the word `heirs' or other words of inheritance, are not necessary to convey an estate in fee simple, but they have been retained in some of the forms in deference to a conservative profession: See California Civ. Code, sec. 1072; California Probate Code, sec. 107; Colorado Mill's Stats. 1930, sec. 816; Idaho Code 1932, sec. 54-506; Montana Rev. Codes 1921, secs. 6855, 6856, 7028; Oregon Code 1930, sec. 63-105; Wyoming Rev. Stats. 1931, sec. 97-110. * * *
"Another thing to be observed in the transfer of property is that the transfer of a thing transfers also all its incidents unless expressly excepted; but that the transfer of an incident to a thing does not transfer the thing itself: See California Civ. Code, sec. 1084; Montana Rev. Codes 1921, sec. 6857.
"The habendum et tenendum clause in deeds, commencing with the words `to have and to hold,' has little or no meaning in our deeds. These were formal words in deeds of land from a very early period. The tenendum was that part of a deed which was formerly used in expressing the tenure by which the estate granted was holden; but since all freehold tenures were converted into socage, the tenendum is of no further use, even in England, and is, therefore, joined to the habendum in this mannerto have and to hold. The words `to hold' have now no meaning in our deeds. If care is used in the granting words of a deed contained in the premises, the habendum clause is useless, and it has, therefore, been omitted from most of the forms of deeds given below. Those who wish to use it will find it to be substantially in the following form: `To have and to hold, all and singular, the above-mentioned and described premises, together with the appurtenances, unto the said party of the second part, his heirs and assigns forever.'"
In drafting the quitclaim deed here involved it is quite apparent that the parties copied in its entirety the form of deed designated "No. 160DeedQuitclaim," set forth at pages 97 and 98 of the 1895 edition of Cowdery's Forms and Precedents.
The deed of April 26, 1906, to the Butte Copper King Mining Co. is most similar in form to the above quitclaim deed forms regularly used in Pennsylvania and New York. The instrument would be a good quitclaim in those states and it should be a valid quitclaim in Montana.
It would appear that the instrument in question in Lodge v. Thorpe, supra, contains, in substance, all the essentials of the statutory form of grant deed prescribed by the codes, R.C.M.1947, § 67-1602, and that in construing same, the court overlooked various other code sections including, R.C.M.1947, §§ 67-1508, 67-1515, 67-1518, 67-1520, 67-1521, 67-1522, 67-1608, 67-1609, 67-1610, 67-1613 and 67-1616.
The majority opinion says: "If the deed purports and is intended to convey only the right, title and interest in the land, as distinguished from the land itself, it comes within the terms of a quitclaim deed, but if it appears that the intention was to convey the land itself, then it is not a quitclaim deed, although it may possess characteristics peculiar to such deeds." However, the above rule is contrary to and in conflict with that applied in Johannes v. Dwire, et al., 94 Mont. 590, 593, 23 P.2d 971, 272, where an assignment of oil royalty containing a granting clause which described the property assigned as "all of my right, title and interest in and to one-half of one per cent * * * royalty" (emphasis supplied) and a warranty clause wherein the assignor agreed "to warrant and defend the title to the same" was held sufficient to pass after-acquired title, the court applying modern, liberal rules of construction and expressly overruling the rule theretofore laid down in Hochsprung v. Stevenson, 82 Mont. 222, 266 P. 406, which "invoked technical rules for the construction of instruments * * *." Compare: Mitchell v. Pestal, Mont., 208 P.2d 807, 809, wherein *457 the Johannes case, supra, is cited with approval.
In this jurisdiction quitclaim deeds have long been used when a party wishes to dispose of or transfer an interest he may think he has in land but which interest he does not care to warrant. 1 Devlin on Real Estate, 3d Ed., sec. 27, at pages 44, 45, quotes with approval from Ely v. Stannard, 44 Conn. 528, as follows: "A quitclaim or release deed is one of the regular modes of conveying property, and is almost the only mode in practice where a party sells, and does not wish to warrant the title. Webster says, `In law, a release, or deed of release, is a conveyance of a man's right in lands or tenements to another who has the same estate in possession.' This is a strictly technical definition, by long established practice. It makes no difference whether the releasor has an existing estate in possession or not. The release will convey whatever interest the releasor has in the property." See: R.C.M. 1947, § 67-1522.
3 Bouvier's Law Dictionary, Rawle's Third Revision, says of a quitclaim deed: "A form of deed of the nature of a release containing the words of grant as well as release. * * * The operative words are remise, release, and forever quitclaim. * * * Covenants of warranty against encumbrances by the grantor are usually added. * * * A quitclaim deed conveys only the interest of the grantor at the time of the conveyance; (citing cases) but such a deed is as effectual to divest and transfer a complete title as any other form of conveyance; (citing cases) * * * A title acquired subsequently to the execution of a quit-claim, with special warranty simply, does not enure to the grantee, and a subsequent purchaser from the grantor is not affected by the recording of the deed executed before the grantor acquired the title; * * * but one who takes a quit-claim deed is presumed to do so with notice of any outstanding equity interest and he therefore knows that he is taking a doubtful title and is put on inquiry concerning it."
Black's Law Dictionary defines a quit-claim deed as: "A deed of conveyance operating by way of release; that is, intended to pass any title, interest, or claim which the grantor may have in the premises, but not professing that such title is valid, nor containing any warranty or covenants for title."
"The modern warranty deed, as distinguished from a deed of quitclaim, is simply a deed of grant with the usual covenants of title added, so that the cancelling of the covenants of title in a warranty deed makes it a deed of quitclaim. Either deed is equally effective to convey the property. * * *." 2 Walsh's Commentaries Law of Real Property, sec. 202, p. 389.
The majority opinion declines to give effect to the operative words, "remise, release and forever quitclaim" used in the deed to the Butte Copper King Mining Co. and, seizing upon the habendum clause, construes the instrument as a common law conveyance with full covenants of warranty. This strained and technical construction is neither proper nor permissible under the commonly accepted usage of this jurisdiction and under our statutes and decisions. "Under the statutes now in force in most states, no words of inheritance, either in the premises or the habendum, are necessary to pass a fee simple. In modern conveyancing the habendum clause in deeds has degenerated into a mere useless form, for the premises contain the names of the parties and the specification of the thing granted, and the deed becomes effectual without any habendum." 16 Am.Jur., Deeds, sec. 53, p. 471.
The record shows that by the deed dated April 26, 1906, the grantee Butte Copper King Mining Co. acquired title to the undivided three-fourths interest in and to the Frenchman No. 2, first granted by patent to Kirk, Dorais and Sumwalt, and that by deed dated May 16, 1945, the Anaconda Copper Mining Co. acquired title to the remaining one-fourth undivided interest in and to said Frenchman No. 2, being the interest first granted by patent to Martin Johnson.
The highly technical interpretation accorded the conveyances by the majority opinion is neither in line with the letter or spirit of our statutes and decisions nor is it *458 in keeping with the so-called "modern trend" of construction.
In my opinion the judgment of the trial court is correct and should be affirmed.
FREEBOURN, Justice.
I disagree with the majority opinion because I believe the judgment of the lower court should be affirmed in toto.
The deed in question is plainly, upon its face, a quitclaim deed, and as such passes no after-acquired title. The intention of the parties that it be a quitclaim deed is clearly evidenced in the deed, where the parties of the first part "remise, release, and forever quitclaim unto the said party of the second part, and to its successors and assigns forever, all the following described property * * *."
There is no sound reason why this deed should be construed to be what it is not. The circumstances warrant otherwise. This is not an action between the grantors and grantees where bad faith and fraud might justify the majority holding.
More than forty years has elapsed between the making of the deed and the institution of this action. During that time a judicial sale of the property involved was made and the property passed from the purchaser at that sale into the hands of an innocent and bona fide purchaser for value, who paid a valuable consideration. It seems entirely unjust to deprive such a purchaser of his property in order to turn it over to so-called stock holders, whose real right to the property is truly questionable.
I believe the better reasoning of courts holding like deeds to be quitclaim deeds should be followed here. See Williams v. Reid, Mo.Sup., 37 S.W.2d 537; Holmes v. Countiss, 195 Ark. 1014, 115 S.W.2d 553; Adamson v. Wolfe, 200 Ark. 360, 139 S.W.2d 674; Rose v. Hagler, 23 Cal.App. 2d 686, 73 P.2d 1232; and Sharples Corporation v. Sinclair Wyoming Oil Co., 62 Wyo. 341, 167 P.2d 29, 168 P.2d 565.