R. P. COOK, Plaintiff and Appellant, *v.* PETER RESTELLI and ENA O. RESTELLI, his wife, Defendants and Respondents.

No. 9234.

Submitted November 5, 1954. Decided March 24, 1955.

Rehearing Denied April 18, 1955.

281 Pac. (2d) 827.

Mr. Ralph J. Anderson, Helena, for appellant.
Messrs. Frisbee & Moore, Cut Bank, for respondents.
Mr. Anderson and Mr. S. S. Frisbee argued orally.

MR. JUSTICE ANDERSON:

There was a judgment for the defendants entered upon a jury verdict in the lower court. The action was brought to recover· the reasonable value of the use of certain real property occupied by the defendants.

The plaintiff, R. P. Cook, now deceased, for cause of action alleged that he was the owner, in fee, of the real property in-

volved in the controversy having derived his title from one Jennie E. Cutshaw. It is alleged that defendants went into possession of the real property under a purported lease and contract of sale from one J. W. Cook and that J. W. Cook had no right or authority to execute the lease or the contract of sale in that he had no right, title or interest whatsoever in and to the said lands and premises. The complaint further alleged what the reasonable value of the use of the premises would be and that a demand for the reasonable value was made upon the defendants. The defendants' answer was a general denial.

The plaintiff's title to the property involved in this dispute is proved by the following:

1. A certified copy of a tax deed to Glacier County covering the property. The deed is dated January 2, 1932, and recorded January 4, 1932.

2. A certified copy of an assignment by Anna Cook to Jennie E. Cutshaw of a contract of sale between Glacier County and Anna Cook covering the property. The assignment is dated July 2, 1937, and was recorded July 8, 1937.

3. A certified copy of a quitclaim deed from Glacier County to Jennie E. Cutshaw covering the property. The deed is dated July 8, 1937, which deed was not recorded until February 6, 1946.

4. A decree made and entered in a quiet title action dated October 15, 1947, quieting Jennie E. Cutshaw's title to the property herein involved.

5. A certified copy of a quitclaim deed from Jennie E. Cutshaw to R. P. Cook covering the property in question and other property. The deed is dated March 25, 1948, and was recorded March 29, 1948.

Ordinarily a record such as this would vest title in R. P. Cook against all claimants. But here we have circumstances which leave little doubt that one J. W. Cook, with the others involved, conjured up a nefarious scheme to destroy any possible claim that defendants might make against the property after the defendants had paid out their money under agreement which of

itself gives rise to many questions as to the genuineness of R. P. Cook's title. However, since the filing of the complaint, R. P. Cook had died and J. W. Cook, administrator, is substituted as plaintiff.

As is stated in the complaint, one allegation claims title in R. P. Cook, another claims that defendants purported to get title from J. W. Cook, who, the complaint alleges, had no title.

An answer in general denial under such circumstances puts in issue every material allegation of the complaint. It goes to the basis of the cause of action and permits the introduction of any proper evidence tending to controvert the facts which plaintiff must establish to sustain his case. 41 Am. Jur., Pleading, sec. 366, page 541. Here the plaintiff must prove his chain of the title and he invites, by his own pleading, proof by the defendants of the title, if any, of J. W. Cook and the circumstance under which the title was derived by either or both parties.

Defendants, in their proof, were made to show many things and events to establish their title. In fact the scheme that was apparently devised by J. W. Cook and others to embarrass the defendants' title was so ingenious that it would be extremely hard to reduce all details to writing and in the interest of saving space we do not propose to do so.

Suffice to say that on February 23, 1937, Anna Cook, through her attorney in fact, J. W. Cook, leased the property in question to Ena O. Peterson, who is now Ena O. Restelli, one of the defendants. Subsequent leases by J. W. Cook as attorney in fact for Anna Cook to the defendants were made. Anna Cook bought the property from Glacier County. A contract for deed was duly signed and executed on March 8, 1932. The first lease was made before the assignment of Anna Cook to Jennie E. Cutshaw of the county contract.

On January 15, 1942, Anna Cook gave a deed to J. W. Cook covering the property in question, which deed was recorded on January 17, 1942. This is the first record title appearing in Gla-

cier County. R. P. Cook, the plaintiff, was a witness to this deed.

On April 20, 1944, J. W. Cook, in his own right entered into an agreement with Peter and Ena O. Restelli, whereby it was agreed that J. W. Cook would quitclaim the property involved upon certain conditions. These conditions having been met, the deed was given.

All of the times in question J. W. Cook had powers of attorney from Anna Cook and Jennie E. Cutshaw. Although the power of attorney from Jennie E. Cutshaw was revoked on March 15, 1944, the document revoking it was not recorded until February 2, 1946.

March 25, 1948, Jennie E. Cutshaw deeded the property to R. P. Cook from which he claims title; on the same day she also deeded the property to R. P. Cook and J. W. Cook, as joint tenants with right of survivorship.

Jennie E. Cutshaw is J. W. Cook's sister-in-law. R. P. Cook, now deceased, was J. W. Cook's brother and Anna Cook is the wife of R. P. Cook, deceased. J. W. Cook prosecutes the present appeal as administrator of the estate of R. P. Cook, now deceased.

It is interesting to note that most of the instruments from and to the various members of the family when filed for recordation were returned to J. W. Cook or his son by the clerk and recorder of Glacier County.

At no time between 1937 and 1944 did anyone disturb the possession of defendants. Nor was their possession disturbed until on March 27, 1948, one day after she had executed a deed to J. W. Cook and R. P. Cook, as joint tenants and a deed covering the same property to R. P. Cook alone, when a letter was mailed to the defendants by Jennie E. Cutshaw demanding of the defendants rent in the amount of $135 a month or possession.

On December 29, 1948, R. P. Clark sent the following letter to Mr. Peter Restelli, one of the defendants:

"December 29, 1948

"Mr. Peter Restelli

"Cut Bank, Montana

"Dear Sir:

"You must know that Jennie E. Cutshaw is the recorded owner of the West 28 feet of Lot 11, first addition to Cut Bank.

"Jennie E. Cutshaw has deeded this property to me.

"You should know that any former lessee or tenant's claim to this property is only mythical.

"You haven't paid any rent since the lessee's contract with Jennie E. Cutshaw expired.

"I prefer good will and will make a worthwhile concession to avert a law suit.

"This proposition must be cleared up.

"Sometimes friends say, 'I will meet you in church.' I don't want to say, 'I will meet you in court.' You will benefit by averting a law suit.

"Yours truly, R. P Cook."

A letter from J. W. Cook to "Dear Brother," obviously R. P. Cook, gives a good picture of the thinking of the entire group. It reads as follows:

"Sunday—8 p. m.

"Dear Brother.

"I wrote Jen a few lines a few days ago, telling her I had fumbled—thru this period,—war squeeze—each group—trying to absorb the other fellow—and—I look back, five years—& see a Brittons—type, keeping cool,—let the other fellow—these,—tenants, fix, pay, or vacate—was the thing to have done, as in Cut Bank—it's grab first—& the best at it, is the premier. I wrote Jen,—she could & should have demanded this—bakery bldg. rent—or, the possession, after the title was, quieted in her name, that did not necessitate, hiring an atty. That can & usually comes in later—& when any property owners, is forced to proceed by law,—& court.

"Now, as, she has wrote these Restellis, requesting rent &— she rec'd a reply from Mrs. Pete Restelli, asking,—if she Jennie E. Cutshaw—knew I had made a contract—?

"Jen didn't answer her that is well enough.

"Now as; she (Jen) has quit clamed it to you it don't clear this getting rent, or clear this (contract I signed) therefore, I would say, you are the becoming owner of Jennie E. Cutshaws interest & this 28 feet & bakery bldg. It will sell for $12000 & this one subtenant pays $60.00 for the short half.

"I would register both Restellis & this soda fountain, sub-lease tenant a notice, who is a former operator, got their money easy from 3.00 wheat, & got sucked in for $6010 cash, for Restellis old 10 year old—2nd hand ice cream machine he bought (used) in 1937 for $2000. Her name is, 'Marjorie Hughes'—& her place is called 'Main Coffee Shop.' I can see, rushing, at times into 'bad deal,' isn't as smart, as to take ones time to get out of them, if, one can make money by, so doing, & you or I won't find a deal, or chance again at, even a half of a $12000 slip up. $135 per mo. rent, is 4% on $40,000 thats why, if I could liquidate everything I've got for $75,000 4% on it wouldn't pay me only half what I have in rent, & that bkry bldg was the best built of the lot, & it wasn't real heavy construction. I've a rusted out water pipe in one bldg, that is leaking, so the replacement costs digging proves our need, put in coffee & be a lot ahead later, on maintenance, as, digging these days costs. There's a lot of jobs lined up in this county for '48,—one could do a little profit, —with better personel. Is any—in sight, if the pay was guaranteed here? Best wishes—Jim. W."

On July 1st R. P. Cook wrote to J. W. Cook as follows:

"Dear Brother

"I am enclosing everything I have to the Cut Bank property. You quoted how much it was worth, I don't believe you can get a nickel out of it.

"We fished in Minn. & Ontario Cutshaw has all beat I have been with, fish morning noon & night, fish when we had plenty

& should of rested, fish, drive the car or lay on the bed. We took a look at some of the land for exchange of the ¼ I have & the ¼ section I deeded to Jen. The hearings are held at the county seats & I expect the local fellow that wants a piece, gets in on tax sale instead of an applicant that wants it for exchange to get out of the game preserve. Jim Ramsey at Beaudette, 77 years old has been a timber cruiser & homestead locater, knows the country. He wouldn't take any money from me for his chore he done I knew Bert Miller cedar dealer & John Tangren lumber yard at Spooner & farmer & bought poles from both of them. Old Jim said when you buy pole I will charge you. Old Jim has 160 acres on highway 4 acres broke, no buildings. H wants $15 per acre, this might be a good safe investment. He should of picked out good land. I wasn't interested. Some real Iowa farmers and some norwiegens have silos & good buildings.

"You should know without me telling you R. A. Cook and Lowell Cutshaw will not tie in with you Jen don't consider you came across for services she rendered you can get a positive answer from me any time on a direct question, don't assume, find out, Yours truly, R. P. Cook."

It is apparent that enclosed with R. P. Cook's letter were all the documents having to do with the property in question.

Counsel for plaintiff make much over the fact that the above exhibits came into the possession of defendants' counsel through other than, as he puts it, ethical means.

This court is not going to admonish any one for uncovering what appears to be a fraud when the only means by which it was done was brought about by the carelessness of J. W. Cook, who now prosecutes this action as administrator of the estate of R. P. Cook. Here the information was obtained by defendants' counsel because J. W. Cook unwittingly left the above, as well as other exhibits, in counsel's office. The only complaint that J. W. Cook may have is that counsel failed to return them.

R. P. Cook, the plaintiff, could have expected that the Restellis may well come into possession of the instruments for what

other reason may he have had in sending them to his brother, J. W. Cook, and in so doing, saying, "I am enclosing everything I have to the Cut Bank property. You quoted how much it was worth, I don't believe you can get a nickel out of it."

There can be no doubt but what the deed from Jennie E. Cutshaw to R. P. Cook and J. W. Cook, as joint tenants with the right of survivorship, conveyed a title to the property to which J. W. Cook upon the death of R. P. Cook became the owner. It is reasonable to assume that J. W. Cook was constantly making sure that although he didn't have title himself he was seeing to it that he held something which always gave him a hold in the event his family chose to forsake him in his scheme.

There was sufficient evidence for the jury to hold as it did that the title to this property was always in J. W. Cook, but without this, the deed from J. W. Cook to Peter Restelli and Ena O. Restelli, was a deed which operated to transfer the after acquired property. We find no need to consider the points raised in connection with the title R. P. Cook had because they became resolved by R. P. Cook's death in that the title merged. If R. P. Cook had any complaints for any fancied loss he sustained they were against J. W. Cook and not the Restellis and the record bears this out.

The agreement for deed between J. W. Cook and the Restellis recites the following: "First party (J. W. Cook) agrees and does herewith at the execution of this agreement, sign a quit claim deed granting the above described premises (the property here involved) to the parties of the second part (the Restellis) * * *"

The case of Henningsen v. Stromberg, 124 Mont. 185, 221 Pac. (2d) 438, is applicable here. Applying the legal principles therein announced we can reach but one conclusion, i. e., that the deed here passed after acquired title.

The deed from J. W. Cook to the Restellis contains almost identical language with the deed in question in the Henningsen Case, supra, and it would be repetitious to recite the rules announced in that case here.

Counsel for plaintiff assign several points of error but upon an examination of them we find none, even though they may be questionable in some cases, which are harmful to plaintiff in the instant case.

For the reasons herein announced the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANGSTMAN and BOTTOMLY, concur.

Mr. Justice Davis not being a member of the court when the cause was submitted took no part.